## GAY *v.* PARPART.

1. When a party offers in evidence an instrument concerning real estate which has been acknowledged or proved so as to be admitted to record, and read in evidence, the burden of proof is on the party denying its execution. The fact that a person whose name is signed as a subscribing witness is alive and is not called to testify, leaves a strong inference that its execution cannot be disproved.

2 A woman married a man by whom she became the mother of two children. She subsequently discovered that he had a wife living from whom he had not been divorced. He then made to her an assignment of a mortgage. *Held*, that the assignment was a meritorious act and not impeachable for immorality of consideration.

3. The difference between a judgment and writ of partition at common law, and a partition by decree in chancery as it affects the title, is, that the former operates by way of delivery of possession and estoppel, while in the latter the transfer of title can be effected only by the execution of conveyances between the parties, which may be decreed by the court and compelled by attachment.

4. Some of the States confer upon their Chancery Courts authority to make such a conveyance by a master commissioner, or they provide that the decree itself shall operate as such conveyance and vest the title in the parties to whom the premises have been severally allotted; but where, in a suit in equity for partition, no such authority or provision exists, the proceeding, while it may be effectual as a division and an allotment of the property, does not pass the title thereto.

5. Where a decree erroneously declared the nature of the estate of each cotenant, and three days thereafter deeds *inter partes* were made which do not follow the decree, and where, twelve years afterwards, a bill in chancery was brought to perfect the partition by compelling conveyances in accordance with the decree, the court may inquire into the equities of the parties arising out of the surrounding circumstances, and refuse to order conveyances in accord with the title as found by the former decree, when it would be inequitable to make such order.

6. If such former decree was made by consent of the party against whom the error was committed, and who received no valuable consideration, and if no one is interested but volunteers, or those who purchased with full notice of the facts, no order for conveyances will be made, but the parties will be left to rely for their title on those which were interchangeably made to each other in accordance with the respective allotments.

7. No person can be an innocent purchaser for value under the first decree who was attorney for the plaintiff, and who purchased from him while the suit to enforce it was pending.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The case is stated in the opinion of the court.

*Mr. Arthur W. Windett* and *Mr. Edward S. Isham* for the appellants.

*Mr. John S. Miller* and *Mr. Lawrence Proudfoot* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The issues raised by the pleadings in this suit are so well stated in the opinion of the district judge, sitting in the Circuit Court where the decree was rendered, that we cannot do better than to state them in his language.

" By the original bill the complainant, Elizabeth Flaglor, charged that she was the sole surviving child of Charles D. Flaglor, deceased; that one Augustus Garrett died in the city of Chicago some time in the year 1848, seized of lot 25, in block 9, in the Fort Dearbon addition to Chicago, together with a large amount of other real estate, leaving Eliza Garrett his widow, and no children nor descendants of a child or children, and leaving a will, which was duly probated in Cook County, whereof said widow Eliza Garrett, James Crow, and Thomas G. Crow were duly appointed executors, in which will said Garrett duly disposed of and devised his estate, and among other devisees in said will was the said Charles D. Flaglor; that in the year 1851 a bill for partition was filed in the Circuit Court of Cook County by said Eliza Garrett, James Crow, and Thomas G. Crow against Letitia Flaglor, Frederick T. Flaglor, and Charles D. Flaglor, and Lucy Louisa Flaglor and Elizabeth Flaglor, children of said Charles D., all of whom, it was alleged, were interested in said will; that upon the answers of the defendants to said bill, proofs taken, and the report of commissions, a decree was entered that partition be made of the real estate of which said Augustus Garrett died seized, among the persons to whom the same was devised by said will, and said lot 25, in block 9, was allotted and set apart to said Letitia Flaglor during her life, remainder over to said Charles D. Flaglor for his life, remainder in fee to his children him surviving, and on failure of children him surviving the fee to

said James Crow and Thomas G. Crow; that the parties entered into possession of the several parcels of real estate as set apart to them, and executed and delivered to each other interchangeably deeds of conveyance so as to invest each of the parties to said bill with the title in severalty to the portions of said estate so set apart and allotted to them, and also a certain written contract in regard to the interests of the children of said Charles D. in the property set off to said Letitia and Charles D.

"The bill then alleged the death of said Letitia and Charles D. Flaglor, and that complainant Elizabeth was the sole surviving child of said Charles D., and entitled as such to an estate in fee to the lands so set off and allotted by said decree to said Letitia and Charles D., and prayed that said James and Thomas G. Crow, as surviving executors of the will of said Garrett, be required to execute proper deeds of conveyance of the fee to said lot 25 to said complainant Elizabeth, and that said Jessell and the other tenants in possession account for and pay over to complainant the rents, issues, and profits of said lot by them received after the death of said Charles.

"The bill also charged that said Charles D. Flaglor, on or about the nineteenth day of August, 1857, made and executed to Frederick T. Flaglor, his father, a certain mortgage deed of said lot 25, to secure the payment of the sum of $20,000, on the first day of November, 1867, together with interest thereon at the rate of six per cent. per annum, payable annually, and that said defendant Catharine Reid was the holder of said mortgage.

"Soon after filing the original bill, the said Elizabeth Flaglor, complainant, died, leaving a will, whereby she devised all her estate to her mother, Lucy C. Flaglor, and by order of court said Lucy C., who has since intermarried with one Gay, was made complainant, and the suit has since proceeded in her name. James and Thomas G. Crow were served with process, but made no defence. Jessell appeared and answered. Catharine Reid, being a non-resident, was brought into court by publication, under the statute of Illinois, and such steps were taken that the case on the original bill was brought to hearing before the Superior Court of Cook County, at the August Term, 1872, and a decree made directing said James and Thomas G. Crow,

as executors, to convey to complainant the title in them, as
surviving executors and trustees of Augustus Garrett, and that
Jessell, who was a tenant of the premises under an unexpired
lease from said Charles D. Flaglor, surrender possession to
complainant, and that the defendant Catharine Reid release
the said mortgage made by said Charles D. to Frederick T.
Flaglor, and that said mortgage be held void as against the
estate of said complainant in said premises. In October, 1873,
said Catharine Reid, by the name of Catharine Parpart (she
having intermarried with Lewis Parpart), appeared in said
cause, and on her motion said decree was opened, and she
was let in to defend in said cause, whereupon she filed her
answer.

" And afterwards, on the first day of February, 1875, she
filed her cross-bill, alleging that said Charles D. Flaglor made
and delivered said mortgage in fee to his father, Frederick T.
Flaglor, and that said Frederick T., on the first day of August,
1863, duly assigned said mortgage and the indebtedness thereby
secured, to her, the said Catharine, and that the same was then
held and owned by her, and that the whole of the principal
sum of $20,000, together with interest from the second day of
June, 1862, remained unpaid. To this cross-bill Arthur W.
Windett, the Connecticut Mutual Life Insurance Company,
and others were made defendants, and a foreclosure of said
mortgage was prayed. To this cross-bill answers were filed by
Mr. Windett and the Connecticut Mutual Life Insurance Com-
pany, alleging, in substance, that, by the will of Augustus
Garrett, said Charles D. Flaglor, was only devised a life estate
after the death of his mother, Letitia Flaglor, in the lands
devised to him by said will, and that it was agreed between
said Eliza Garrett, widow, and James Crow, Thomas G. Crow,
and said Letitia Flaglor, Frederick T. Flaglor, her husband,
and said Charles D., that a partition should be made among
them of the property devised by said will, and that by such
partition only a remainder for life, after the death of said
Letitia, should be vested in said Charles D., and that on his
death the fee of the property so allotted to said Letitia and
Charles should go to the children of said Charles D. ; that, in
pursuance of said agreement, the bill for partition was filed in

the Cook County Circuit Court, and that said Charles by his answer appeared and consented to a decree, and that the decree in said partition cause was made in pursuance of such consent, and that said Charles was bound thereby and precluded from asserting or claiming any other than a life estate in said lands, and that said Frederick T. Flagler and said Catharine Reid were bound by such decree. That said mortgage was given by said Charles to said Frederick without consideration, and that said Catharine was not a *bona fide* assignee for good or valuable consideration, and that said mortgage only conveyed the life estate of said Charles D. in the mortgaged premises.

" Before the answer of the insurance company was filed the cause was, on petition of said company, removed to this court, and on the 5th of November, 1877, the said Catharine, by leave of this court, filed her amended cross-bill, alleging that all the title and interest of Mr. Windett and the insurance company, and the other defendants were acquired after and were subject and subordinate to the said mortgage held by her, and further alleged that said Charles was, by the will of said Garrett, given an estate in fee after the death of his mother Letitia; that no agreement was ever made by Charles to accept an estate for life; and that the fee should go to his children; that said Charles never consented to said decree in said partition case awarding him only a life estate in the property set off to him; that the deeds made interchangeably between the devisees of Garrett and the contract between said parties made at the same time were not made in pursuance of or for the purpose of satisfying said decree; that said Charles had never ratified said decree nor accepted a life estate in lieu of a fee in the lands set off to him, and that said decree was fraudulent and void as against said Charles.

" The answers of Mr. Windett and the insurance company to the amended cross-bill denied all frauds or mistake in the decree in the partition suit, and insisted that Charles and the cross-complainant were bound thereby, and also insisted that said decree was in accordance with and in furtherance of the interest of the will of said Garrett, so far as it related to the estate of said Charles in the lands allotted to him."

On a final hearing upon the pleadings and proofs, the Circuit Court rendered a decree in favor of Catharine Parpart, establishing the validity of the mortgage set out in the crossbill and its assignment to her, adjudging to her the amount of the bond, with interest, declaring it to be a lien on the property in controversy paramount to that of all other parties to the suit, and providing that unless the amount was paid the property should be sold to satisfy the debt.

From this decree Arthur W. Windett, Lucy Flaglor Gay, and the Connecticut Mutual Life Insurance Company took an appeal, which brings it before us for review. The case, as it presents itself to us, concerns the interest of no other parties but these, and is limited to the proceeding growing out of the cross-bill.

The first question raised by these issues is the validity of the mortgage made by Charles D. Flaglor to Frederick T. Flaglor, his father, and of the assignment of that mortgage to Mrs. Parpart, then Catharine Reid. If this be decided in her favor, a second question is, whether at the date of the mortgage the estate of Charles Flaglor was a fee-simple in the property mortgaged or only an estate for life.

As the least difficult of these questions, and the one which in the natural order of discussion should be first disposed of, we will consider the validity of the mortgage and its assignment.

There is but little question raised that as between Charles and Frederick Flaglor the transaction was an unexceptionable one. At that time, whether the estate was a fee simple or a life estate, certain transactions took place between them by which Charles became indebted to his father in the sum of $20,000. This sum the father seemed disposed to permit to remain in the hands of his son on the security of a mortgage on this property. He accordingly, in the year 1857, took from Charles his bond for that sum, payable ten years after date, with annual interest at the rate of six per cent, secured by this mortgage. The interest was promptly paid, notwithstanding the death of Charles in 1858, up to the death of his father in 1865. There is no reason, therefore, to doubt the validity of the mortgage as between the parties thereto.

The assignment of the bond and mortgage by Frederick T.

Flaglor to the present appellee is assailed on several grounds, which resolve themselves into a denial of the execution of the assignment and the immorality of the consideration on which it was made.

The assignment itself is on a separate piece of paper from the mortgage and the bond, and the signature is made by the cross-mark of Flaglor, instead of being in his own handwriting. As he was a man of some education, and it is shown that about that time he was in the habit of writing letters and signing his own name to them, that circumstance is deemed suspicious.

The relations at that time existing between him and Catharine Reid, which will be hereafter considered, are supposed to increase the force of these suspicions; also the fact that the bond and mortgage were permitted to remain in his possession.

In answer to this, it is to be considered that he was a very old man, easily shaken by illness, and it was probably during some such attack, when he might not have been able to write, that he determined to make the assignment which his sense of justice dictated. Original specimens of his signature, written within a short time of this transaction and produced to this court, show a shaky and difficult handwriting, and lead to the conclusion that if he was ill it would be extremely natural to have somebody write his name, which he authenticated by making a cross under it.

Its execution is attested as sealed and delivered in his presence by W. G. McDonald as a witness, and the original paper produced before us shows that the name of Flaglor is in the same handwriting as that in the body of the instrument, which is apparently that of the witness.

There is another consideration, however, of very great weight in favor of the validity of the assignment. Its execution was proved shortly after the date it bears, before a justice of the peace, in accordance with the laws of the State of New York, where Flaglor then resided. The certificate of this fact, with that of the clerk of the proper court, was such that by the laws of Illinois the assignment was admitted to record in the county of Cook of that State, and is *prima facie* evidence of its execution by Flaglor. When this assignment and certificate were produced in evidence, the *onus* of proving that it was not the

act and deed of Flaglor devolved on the appellants. The witness was living at the time that the deposition of the appellee was taken in New York to prove the execution of the paper. He was competent to prove what was done in regard to its execution; and the fact that the appellants, with a knowledge of the case made by the positive testimony of Catharine Reid and the certificate, did not call the man whose name was affixed to the paper as a subscribing witness, leaves but little doubt that it could not be thus successfully impeached.

Reverting to the question of the consideration moving Flaglor to make this assignment, the facts seem to be that Catharine Reid had been for several years a domestic in his family while he was married to and living with a second wife, and she left his service while he and his wife were yet living together at Newburg, in the State of New York. Not long after this he separated from his wife and went to live in St. John, New Brunswick. After being there some time he wrote to Catharine Reid that he was not in good health and needed somebody to take care of him, and requesting her to come and do so. With this request she complied, and, according to her testimony, he, after she arrived there, informed her that he had a divorce from his wife and requested her to marry him. The certificate of the clergyman of St. John, with both her signature and his to the fact, leaves no doubt that they were married in that place on the 23d of January, 1862.

The fruits of this marriage were two children, both girls. Flaglor and Catharine returned to Newburg a year or so after this, and there she ascertained that he had not been divorced from his wife, and of course understood at once that her children were illegitimate, and that their father was liable to a prosecution for bigamy. He at that time, as we have said, was a very old man, and it does not appear that he and this family of his had any other means of support than the interest accruing on this mortgage.

Notwithstanding the assault made upon Catharine Reid in reference to her chastity, and the probability of illicit intercourse with Flaglor previously to this marriage, and the fact much relied on that she had an undue influence over him at the time the assignment was made, we cannot doubt that in

executing and delivering it to her he did a meritorious act, honorable and just, as the only atonement he could make for the deception he had practised upon her, and as placing in her hands the means of supporting the children of whom he was the father. It was not the case of a contract for future illicit intercourse of the class which the authorities hold to be against public policy, but an appropriate means of providing for the support of a woman whom he had married while he had a wife living, and of the children resulting from that marriage.

We are satisfied from these considerations that the mortgage in question was a valid instrument in the hands of the appellee, Catherine Parpart, and a lien upon such interest in the property which it conveyed as Charles D. Flaglor had at the time he made it.

As we have already said, the question on this branch of the subject is whether Charles D. Flaglor at the time he made the mortgage owned a fee-simple in the property conveyed by it or a life estate. Such interest as he had came to him primarily by the will of Augustus Garrett.

The first six sections of this will mention the beneficiaries of his bounty as regards the *income* of his estate until the death of his wife Eliza, Mary Banks, and Letitia Flaglor, and throws very little light upon the question we are considering. The seventh section, which provides for the final disposition of his property after their decease, contains the language to be construed. It reads as follows: " Upon the death of my wife Eliza and of Mary Banks and Letitia Flaglor, I direct that the whole of my estate shall then be equally divided between Charles D. Flaglor, son of said Letitia, if he or his legitimate children survive said Letitia (in case he be dead, his legitimate children shall take as their father would if alive), and the said James Crow, and the said Thomas G. Crow, each taking one-third of the whole. But if Charles D. Flaglor be at that time dead, leaving no legitimate children, the whole of my said estate shall be divided between the said James Crow and Thomas G. Crow. In all cases the heirs and devisees of the said James Crow and the said Thomas G. Crow, respectively, shall succeed to the right and portion which their ancestor and

decedent would have received had he been alive, and in all cases the heirs and devisees of the said James and Thomas, respectively, and the children (legitimate) of said Charles D. Flaglor, shall only succeed to and take the share or portion of income and of estate in general which their ancestor or decedent would have had, taking *per stirpes* and not *per capita.*"

The precise question here raised has been repeatedly before the courts of Illinois, as has the whole subject of Charles D. Flaglor's interest under this will, and we think it may be affirmed, that by several well-considered opinions of the Supreme Court of that State, a construction has been established which gives to him, on the death of his mother Letitia, a fee-simple estate under that will. Indeed, we do not understand counsel here to seriously controvert that such is a true construction of that instrument, and as this accords with our own. we adopt it without further discussion.

On the death of Garrett his will was admitted to probate on the 28th of February, 1849, and his widow, Eliza Garrett, having renounced the benefits of its provisions, asserted her right to dower, whereby she became entitled to one-half of the estate. In 1851, long before her death or that of any of these devisees, the parties interested determined to have a partition by a proceeding in chancery in the Superior Court of Cook County. In that proceeding the property, which is now in controversy, was allotted to the share which went to Letitia Flaglor during her life, and after her death to Charles D. Flaglor.

Under the construction of the will which we have just adopted, Charles D. Flaglor was, at the time of making the mortgage to his father, the owner in fee of the property conveyed by it, and there can be no doubt that the mortgage constituted a lien paramount to everything else in the way of a claim or title to the property.

The appellants here rely upon the decree of partition to which we have alluded, and on certain deeds and agreements alleged to have been made by Charles D. Flaglor in connection therewith, as establishing and limiting his interest in this property to a life estate, with remainder in fee to his children on his death, and whether this contention be well founded or

not, presents the main controversy in the case. That decree of partition, dividing the estate into three parts, does unquestionably declare " that the real estate by said commissioners set off and allotted to Letitia Flaglor, Charles D. Flaglor, and his children, if he die leaving any child or children, be and the same is hereby set off and allotted and the income thereof to the said Letitia Flaglor during her life, and the said Charles Flaglor, if he survive said Letitia, during his life, and the child or children of said Charles D., if he die leaving any child or children, in fee."

The first thing which suggests itself as proper to be considered in the solution of this question is to ascertain what was the law of the State of Illinois on the subject of partition at the date of that decree. Looking at the statutes of the State as we find them in the revision of 1880, with references to the sources from which this revision is taken, we find that they made provision distinctly for two modes of effecting a partition, one of which, as declared by the statutes of 1845, was by bill in chancery as theretofore, and the other by petition to the Circuit Court of the proper county. Very little is said on the subject of partition in chancery, as the provisions of the statutes are more specifically directed to the forms of proceeding by petition in the proper court.

The proceeding which we are now to consider declares itself on its face to be in chancery, and the Supreme Court of the State, in reference to this very decree, decides it to be so. *Wadhams* v. *Gay*, 73 Ill. 415. We take it for granted that the statute of Illinois, in making this provision and in leaving the parties to proceed by bill in chancery, intended that such a proceeding should have the force and effect of a partition in the High Court of Chancery of England, and in the main conform to the established chancery practice. That system does not deal with or decide questions of controverted title. Its purpose is to make division among the parties before the court, of real estate in which they had interests or estates that were not in controversy as among themselves.

It is another principle of the chancery jurisdiction in partition that a decree itself does not transfer or convey title even after the allotment of the respective shares of each of the

parties to the proceeding, but that the legal title remains as it was before.

In this respect a decree is unlike the writ of partition at the common law, which in such cases operates on the title only by way of estoppel. In chancery, however, this difficulty is remedied by a decree that the parties shall make the necessary conveyances to each other, and they may be compelled to do so by attachment, imprisonment, and other powers of the court over them in person.

In many of the States of the Union, where the equity powers of the courts have been aided by statutes to get rid of the difficulty of compelling parties in person to execute conveyances, the court is authorized to appoint a commissioner to execute the conveyances in the names of the parties. In other cases the statute declares that such a decree itself shall operate as a conveyance of the title.

At the time that the decree was rendered in the Superior Court of Cook County, which we are considering, we are not aware that any statute existed which gave such effect to the decree of the Chancery Court in partition. We find by the Revised Statutes to which we have alluded, sect. 29, on partition, that in the year 1861, ten years after this decree was passed, it was enacted that in suits for the partition of real estate, whether by bill in chancery or by petition, the court may investigate the question of conflicting or controverted titles, and remove clouds on the title of any of the premises sought to be partitioned, and invest titles by their decrees in the parties to whom the premises are allotted, without the forms of conveyance of " infants, unknown heirs, and other parties to the suit." Other powers are also conferred on the courts in such cases.

In the case of *Whaley* v. *Dawson*, 2 Sch. & Lef. 367, Lord Redesdale says : " Partition at law and in equity are different things. The first operates by the judgment of a court of law, and delivering up possession in pursuance of it ; which concludes all the parties t it. Partition in equity proceeds upon conveyances to be exec ted by the parties, and if the parties be not competent to execute the conveyances, the partition cannot be effectually had."

And in his work on Pleadings in Chancery, he gives this clear statement of the nature of the equity jurisdiction in partition : —

"In the case of the partition of an estate, if the titles of the parties are in any degree complicated, the difficulties which have occurred in proceeding at the common law have led to applications to courts of equity for partition, which are effected by first ascertaining the right of the several persons interested, and then issuing a commission to make the partition required, and upon the return of the commission and confirmation of that return by the court, the partition is finally completed by mutual conveyances of the allotment made to the several parties. But if the *infancy of any of the parties*, or other circumstances, prevent such mutual conveyances, the decree can only extend to make partition, give possession, and order enjoyment accordingly, until effectual conveyances can be made.

"If the defect arise from infancy, the infant must have a day to show cause against the decree after attaining twenty-one ; and if no cause be shown, or if the cause shown should not be allowed, the decree may then be extended to compel mutual conveyances. If a contingent remainder, not capable of being barred or destroyed, should have been limited to a person not in being, the conveyance must be delayed until such person shall come into being, or until the contingency shall be determined, in either of which cases a supplemental bill will be necessary to carry the decree into execution." Mitford's Pleadings, Jeremy's edition, 120. See *Attorney-General* v. *Hamilton*, 1 Madd. 214; *Cartwright* v. *Pultney*, 2 Atk. 380; Story's Equity Jurisprudence, sects. 652, 653.

Mr. Adams, in his admirable condensation of the equity jurisdiction, says: "The confirmation" (of the commissioner's report) "does not, like the judgment on a writ of partition, operate on the actual ownership of the land, so as to divest the parties of their individual shares and reinvest them with corresponding estates in their respective allotments, but it requires to be perfected by conveyances ; and the next step, therefore, after confirmation of the return is a decree that the plaintiffs and defendants do respectively convey to each other their respective shares, and deliver up the deeds relating thereto, and

that in the mean time the allotted portions shall respectively be held in severalty." Adams, Equity, 231.

This is precisely what was done in this case, except that no day in court was given to the infant children of Charles D. Flaglor, nor any decree for conveyances by them or by the other parties to the suit.

That decree, therefore, did no more than to make a division and allotment of the land, and had no effect upon the actual ownership or upon the title of the parties, and did not even contain an order for possession in severalty.

We must, therefore, look to the conveyances, which were made three days after this decree was entered, for any limitation of Charles D. Flaglor's interest to an estate for life in the share allotted to him and his mother, if any such there be.

In reply to this view of the effect of the decree, it is said that it was a consent decree, and must be held binding on him by reason of that consent. It is certainly true that on the face of the proceeding, as evidenced by the bill of Eliza Garrett and the two Crows and the answer of Charles D. and Letitia Flaglor, the partition was one previously agreed on by all these parties, and the bill itself gives a schedule of the different parcels of the property to be allotted by the decree to each of the three interests concerned in it. The bill also sets forth very explicitly the interest of Charles D. Flaglor as being a life estate, with remainder in fee to his children, two of whom were then alive.

To this bill an answer on behalf of Frederick T. Flaglor, Letitia Flaglor, and Charles D. Flaglor was filed by their solicitors, Arnold and Lay. It might admit of some question whether this answer was intended to admit that the estate of Charles D. Flaglor was merely a life estate; but as the Supreme Court of Illinois, in the case of *Flaglor* v. *Crow*, has decided that it shows consent, we assume it to be so. 40 Ill. 414.

Waiving at present the question on which there is much conflicting testimony, whether Charles D. Flaglor authorized these attorneys to assent for him to that construction of his interest in the property, we remark that the decree itself was incomplete and did not purport to transfer the title between

parties, nor did it order or direct that such conveyance should
be made in accordance with its provisions.   This decree, how-
ever, was entered of record on May 26, 1851, and deeds were
made *inter partes* on May 29.   These deeds do not refer to the
decree in any manner, nor do the deeds of the other parties to
Letitia and Charles Flaglor profess to describe their interests
in the property, and the deed as found in the record from the
Crows is to Charles D. Flaglor alone, and none of the deeds
mention his children.

The agreement of the same date was executed by all the
parties to the partition, except the children of Charles D.
Flaglor, and seems to have two purposes, explanatory of the
deeds of conveyance made at the same time.   The first of these
purposes was to declare the proportion of the debts of the estate
of Augustus Garrett which should be charged upon the interest
of each of the parties, and the second to make some explana-
tion of the relations to the estate of Charles D. Flaglor and his
children.

The purpose of the provision on this latter subject was to
have Letitia and Charles D. Flaglor and Frederick " to save
and keep harmless the shares and portions of the estate allotted
to Eliza Garrett, James Crow, and Thomas G. Crow from all
claim or claims which any child or children of Charles D.
Flaglor may have or become entitled to under the said will
or decree of any court now made or hereafter to be made."
There is also a previous reference in said instrument to the
interests of the children and descendants of Charles D. Flaglor
which, under said will, such children or descendants may have
or at any time be entitled to.

- This court agrees with counsel for appellee that there is noth-
ing in these deeds or this contemporary agreement by which
Charles D. Flaglor agrees or binds himself, or consents that his
interest in the property is a life estate.   The deeds of convey-
ance are absolutely silent on the subject, and do not mention
the children at all, but convey the estate to him and Letitia
Flaglor.   The explanatory agreement was evidently intended
to refer this question to the true construction of the will, men-
tioning the rights of the children to be such as they may have
under that will, and guaranteeing Eliza Garrett and the Crows

against the effect of such construction of it as would make his interest a life estate, with remainder to his children.

Assuming, then, that these conveyances *inter partes* were made as a part of the partition proceedings, they fail to carry into effect that part of them which declares as between Charles D. Flaglor and his children that his estate was an estate for life. It was undoubtedly in this view of the subject that, after the death of Charles D. Flaglor and his mother, the advisers of Elizabeth Flaglor, his only surviving child, caused the commencement of the suit in chancery, in her name, of which the present cross-bill has become a part.

This bill of Elizabeth, upon its face, recites the proceedings in the original partition suit, and the contemporary conveyances and agreement, and the death of Letitia and Charles D. Flaglor and of one of his children; and considering the imperfection and insufficiency of all these proceedings to vest in the complainant, his surviving child, the title to the real estate allotted to him and his mother in the decree, it demands of all the other parties to make such conveyances as will perfect her title, and it prays for an account of rents and profits from those who have had the property in possession. To this bill Catharine Reid, now Catharine Parpart, was made a defendant under allegations setting out the mortgage on which the present decree was rendered, and alleging it to be a cloud on the title of the complainant, and praying that it be held to be no lien on the property.

Much of the argument of counsel in this case and the testimony on which the case was heard in the court below has relation, on both sides, to the question whether Charles D. Flaglor authorized his attorneys to give the consent to the limitation of his estate which is found in his answer to the original partition suit.

It is not to be denied that the testimony on this subject is conflicting, as were also his declarations and actions about the time of the rendition of that decree. We do not deem it material to the case before us to decide this question, because, as neither the decree itself, nor the deeds made three days after, nor the article of agreement assented to by the parties at the same time, made any actual transfer of title different from that

which resulted from the will of Augustus Garrett, and as the very purpose of Elizabeth Flaglor's suit is to effect that which was not done by that decree, the only effect which the consent of Charles D. Flaglor to it could have, if he ever consented, would be to have estopped him, or some one claiming under him, from contesting the force of the decree.

In this view of the subject it is important to recur to what took place very soon after this decree was rendered. As soon as Charles D. Flaglor became aware of the construction which was put upon the decree as regards his estate in the property, he filed his bill of review, on the sixteenth day of April, 1853, in the proper court, to set aside and correct it, so far as it concerned that matter. To this bill his mother and father and two children were made defendants. A decree was rendered on the eleventh day of May, 1854, in which the former decree in that respect was reversed and the one-sixth allotted to the Flaglors was declared to be vested in Letitia Flaglor, for and during the term of her natural life, with remainder in fee to Charles if he survived her. This decree remained in full force until after the death of both Letitia and Charles, when, in April, 1866, a writ of error was sued out of the Supreme Court of Illinois in the name of Elizabeth Flaglor, by James Link, her next friend, on which the decree on the bill of review was reversed, on the sole ground that the original decree of partition was by consent, and that such consent cured all errors.

It will be observed that the decree on the bill of review remained in force for over twelve years, that during two years of that time Charles D. Flaglor had come into the seisin of the fee-simple estate, which both that decree and the will declared to be in him, and that it was during this period that the mortgage was made by him on which the decree we are now considering is founded.

Very shortly after this reversal in the Supreme Court, the original bill in the present case was filed by Elizabeth Flaglor, which was prosecuted in her name until August, 1867, when she died, leaving a will by which she devised all her property to her mother, Lucy G. Flaglor, now Lucy Flaglor Gay, one of the present appellants.

Early in 1872 the suit was revived in the name of Lucy Flaglor. By amended bills in her name and by the cross-bill of Catharine Parpart, formerly Catharine Reid, the issues in regard to the controversy now before us were finally raised.

No person now interested in this controversy obtained any interest whatever in this property by any purchase or by any transaction by which they parted with money or other valuable consideration until the purchase by Arthur W. Windett from Lucy Flaglor after her bill of revivor had been filed, and no one else but him and the Connecticut Mutual Life Insurance Company, another one of the appellants, has ever parted with anything of value on the faith of any of the transactions previously recited, except it be Frederick T. Flaglor, who loaned his son Charles the money on the mortgage now in question.

It is impossible to see how the doctrine of estoppel can operate in favor of any of these appellants. Such interest as Elizabeth Flaglor and Lucy Flaglor, her mother, had or acquired was by inheritance or devise. Neither of them ever paid a dollar or parted with anything of value or did anything to their detriment by reason of any act or deed of Charles D. Flaglor, nor by reason of the original decree of partition and the deeds made under it. The one was his child and took under his rights, the other was his wife and the mother of his child, and took under her will. Windett is, therefore, the first person who can pretend to have parted with any consideration for the title which he asserts to this property, and the insurance company holds under him. But both these parties became purchasers and acquired their interests during the pendency of this suit, and were bound to know that they purchased subject to its result. The existence of the mortgage which they now contest was recited in the original bill by Elizabeth Flaglor and in the bills of revivor and supplemental bills filed by Lucy Flaglor, and Catharine Parpart was a party to all those bills, and her right to a paramount lien was referred to and she was made a party in regard to it in them all.

It is urged in favor of the appellants that a decree *pro confesso* by a default on the publication of notice was made against Catharine Parpart declaring her claim invalid, and that very soon after this and before that default was set aside, Windett

received his deed from Lucy Flaglor. It is strenuously urged that this fact confers upon him the character of an innocent purchaser for value, and removes him from the category of a purchaser *pendente lite*. But this argument is not sound.

The decree *pro confesso*, taken without any actual service on Parpart, could, within a period fixed by the laws of Illinois, be set aside upon her appearance and motion to that effect. and it was so done in this instance, and she was permitted to come in and file her answer and cross-bill.

Windett was bound to know, when he purchased, the inconclusive character of the decree *pro confesso* on which he now relies, and that it was not in the power of himself and Lucy Flaglor to defeat the right which the law gave to the absent defendant and render it of no avail by this transfer of title. In addition to this, it is impossible, in any light, to regard Windett as an innocent purchaser, since he was the attorney and counsellor in that suit of Elizabeth Flaglor during her lifetime, and of Lucy Flaglor afterwards, and so remains to the present hour. It is also in evidence that he was well aware of the existence of the mortgage and its possession by Catharine, and at one time had promised that it should be paid, and at another time had entered into negotiations for its purchase, all of which was prior to the date of the deed from Lucy Flaglor under which he now asserts title.

The Connecticut Mutual Life Insurance Company also acquired its interest *pendente lite*. That interest arises under a mortgage given by Windett to secure the loan of money, and it appears by the record that in addition to this mortgage they took other security, in consequence of the uncertain condition of the title. They have also the security of Windett's personal obligation.

The only party in the litigation before us who has any just claim to the protection of an innocent purchaser without notice is the appellee Catharine Parpart. The mortgage which she now holds was given to Frederick T. Flaglor by his son Charles, for which the father gave full value at the time when Charles stood seized of the estate in fee-simple to the property in controversy, according to every source of information open to any one upon inquiry. Under the will of Augustus Garrett

the title of Charles was clear; under the conveyances made between parties subsequently to the decree of partition and the contemporary agreement, it was clear. The decree itself, the only thing which cast any shadow upon that title, had, upon bill of review, been set aside in that respect, and the title of Charles declared to be an estate in fee, and the remainder of the decree stood affirmed as a division of the property. Under these circumstances the right of Frederick T. Flaglor to feel secure in taking the mortgage on the property which he did from his son Charles, in the faith that he was secured by a good title, is much stronger than that of Windett and the insurance company, purchasing during the existence of the litigation which pointed out clearly the defect in their title.

Without deciding whether Charles D. Flaglor ever gave his consent to the original decree, we remark, in the first place, as we have said before, that that decree did not *proprio vigore* transfer title from or to any one. In that suit, as between him and his children, there were no adversary proceedings, and such decree as was had being dependent upon consent, did not operate as a judicial decision by the court of his rights and those of his children. There was, therefore, neither a judgment of the court nor any valuable consideration passing from the children to him to bind him to such consent, beyond that of an ordinary, gratuitous promise, which may be retracted before it is performed. The deeds and the agreement made three days after the decree show that if at any time he had given his temporary consent to the decree, he had determined so far to retract as to keep the matter in his own power; and the bill of review and the decree which he obtained upon that review, and all his subsequent conduct in regard to the property, left no doubt in the minds of any one that he had determined to assert his full right of ownership in fee-simple under the will.

It is in the face of all these circumstances that, many years after her father's death and many years after the execution of the mortgage in this suit, proceedings were commenced in the name of Elizabeth Flaglor, then a child, to secure the benefit which her advisers supposed the original decree of partition conferred on her.

Under all the circumstances of this case, the diligence with which Charles D. Flaglor repudiated the supposed consent and had it set aside by a regular bill of review, the long period of twelve or fifteen years in which the matter was permitted to lie in that condition, the fact that the daughter and her mother. are all volunteers, and that Windett is a purchaser with notice of the litigation and taking part in it as an attorney in the case, and the insurance company holding their interest also with full notice of the facts, we think it would be inequitable to make a decree now to do what was left undone in a former decree and which seems to have been so left by the intention of the parties to it. We cannot better express ourselves than in the following language from the opinion of the court in the case before referred to : —

"We do not regard that it militates with the doctrine of the conclusive effect of what is *res judicata*, that where there is an incomplete decree, and it is ineffective for want of the provision of any means for its execution, and an application is made to a court of equity to supply the imperfection, so as to render the decree effective, then it is admissible to look at the real nature and character of the decree as it may appear in the light of surrounding circumstances, for the purpose of determining whether there is such an equitable ground for action as will move a court of equity to interpose. Equity will penetrate beyond the covering of form and look at the substance of a transaction, and treat it as it really and in essence is, however it may seem. In outward semblance this partition decree is a decision of court upon the relative rights of Charles D. Flaglor and his children under the will of Garrett. In essential character it is but the judicially recorded supposed agreement of Flaglor. And upon an appeal to equity by original bill to lend its assistance for carrying it into execution, because of an omission in the decree in providing any means of its execution, it would seem reasonable that the same rule of the court's action should obtain as in case of any solemn agreement under seal; and where there are manifest the elements of injustice, mistake, surprise, misapprehension, *and want of consideration*, to remain passive." *Wadhams* v. *Gay*, 73 Ill. 415.

*Decree affirmed.*