## Austin and others *v.* Rutland R. Co. and others.

*(Circuit Court, D. Vermont. June 19, 1883.)*

**CIRCUIT COURT—JURISDICTION—PARTITION IN EQUITY—CITIZENSHIP—PROPERTY TAKEN BY RAILROAD—COMPENSATION.**

A. owned a life interest in one undivided half of a water lot, and defendant corporation acquired by virtue of its charter the other half of the lot and the interest of A., and laid its tracks across, and took possession of, and used for railroad purposes, the whole lot. By contract with the railroad company, and in

pursuance of a statute of the state, D. erected and occupied a dock along the front of the lot. No effort was made to acquire title to the remainder. The state law provided that in every case where a railroad company had entered upon and taken possession of land for its road, and had not paid the owner therefor, nor, within two years from entry thereon, had the damages appraised by commissioners, and an award made and delivered, the ordinary courts of law should have jurisdiction thereof, and that a justification under the act of incorporation should not bar the suit; and the supreme court of the state had held that under this statute the complainants in this case could not maintain ejectment for this lot until the expiration of two years from the time when their right accrued. A. having died, her heirs, and the administrator of a deceased heir, whose heirs were minors, and citizens of another state, filed a bill in equity in the circuit court for a partition of said lot. *Held* that, notwithstanding the language of the state statute, the remedy was not at law only, as claimed by defendant, but that a bill in equity for a partition was maintainable, the requisite citizenship existing; and that as complainant had never received compensation for the taking of the interest by the defendants, and they would have been entitled to a partition of the lot, which was not possible without disproportionate damage to defendant, owing to the dock and improvements placed thereon by them, complainants were entitled to a decree for the payment to them of the value of their interest in the land and dock, to be ascertained by commissioners, upon conveying to defendants their interest therein.

In Equity.

*William G. Shaw* and *Edward J. Phelps*, for orators.

*Daniel Roberts*, for defendants.

WHEELER, J. This bill is brought for a partition of water lot No. 10 in the city of Burlington, which is ten rods long and two rods wide of water front on Lake Champlain, and of a dock extending therefrom into the waters of the lake. Nelly Austin had an estate for life in an undivided half of this lot, with remainder to her heirs. The rights of the several owners have been adjudicated at law. *Austin* v. *Rutland R. Co.* 45 Vt. 215. The legislature of the state provided that any person owning lands adjoining the lake might erect any wharf or store-house, and extend the same from the land of such person in a direct course into the lake between the lands of such person and the channel of the lake, but not far enough to impede ordinary navigation in passing up and down the same; and that persons erecting such wharves or store-houses, their heirs or assigns, should have the exclusive right to the use, benefit, and control of them forever. Gen. St. p. 447, §§ 5, 6, 7; Rev. Laws, §§ 1919, 1920. The Champlain & Connecticut River Railroad Company—afterwards called the Rutland & Burlington Railroad Company, and to whose rights the Rutland Railroad Company has succeeded—acquired the right to the other undivided half of this lot, and the life estate of Nelly Austin in it, by virtue of its charter, and entered upon it, and laid tracks across it, and filled into the waters of the lake in front of it, and occupied the whole for the purpose of operating its railroad. By contract with the Rutland Company the dock in front of it was erected, extending in front of other lands of the company, and is now held by the defendant Dodge. The Central Vermont Railroad Company is the lessee of the railroad and operates it. Nelly Austin died in 1870. The orators are her heirs, and one of them is the adminis-

trator of the estate of a deceased heir, whose heirs are minors and reside in Pennsylvania, and are not otherwise made parties. No measures have ever been taken by either railroad company to acquire the right to this remainder.

The statutes of the state provided that in every case where a railroad company had entered upon and taken possession of land for the construction and accommodation of its railroad, and had not paid the owner therefor, nor within two years after such entry had the damages appraised by commissioners, and an award made and delivered, the ordinary courts of law should have jurisdiction thereof, and that a justification under the act of incorporation should not bar the suit. Gen. St. p. 221, § 26; Rev. Laws, § 3371. Under this statute it was held that the orators could not maintain ejectment until after two years from the time when their right accrued. *Austin* v. *Rutland R. Co.* 45 Vt. 215. It is now claimed on behalf of the defendants that under this statute the orators are not entitled to the possession of the property, but have only a right to recover damages for its taking, and that, therefore, this proceeding cannot be maintained; that there is a fatal defect of parties, because the heirs of the deceased heir of Nelly Austin are not personally made parties; and that the orators have not any right whatever to the dock. Much reliance is placed upon the case of *Austin* v. *Rutland R. Co.* 45 Vt. 215, for support to these claims in respect to the right to the property. Some of the remarks of the learned judge who delivered the opinion of the court, considered abstractly, do give them countenance; but, when considered with reference to the precise question and state of the property about which they were made, they are consistent with other views, and not determinative of the question now presented. The question whether the ejectment could be maintained within the two years was a controlling one there, and when that was decided in the negative the case was disposed of. Most of the remarks about the right to the dock had reference to the rights of the ancestor of Nelly Austin, who died before the statute giving the right to the wharf was passed. The cases referred to under that head arose in the absence of such legislation.

If this statute in relation to the rights of owners whose property has been taken without payment for railroads, was, in a case like this, to be construed as leaving to the owner a mere right to recover damages, it would be clearly contrary to the constitution of the state. The right to take private property for a railroad can, of course, be justified, because only that it is taken for public use. The constitution of this state provides that "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." Chapter 1, art. 2. A right to recover money is not money. The owner would have the right to recover damages for taking the property without recourse to the constitution. This part of the constitution was not made in vain, but seems to have

been a guaranty, beyond the power of the legislature, that the owner should have the right, even against the public, to have his property, or its value in money for it. The provision in the statute that, after the time limited, the ordinary courts of law should have jurisdiction, and that the charter should not be a bar, seems to take away the protection from suit which an appraisal and offer of payment of damages would give, and to leave the railroad company, and those claiming under it, liable to suit as wrong-doers. The cases cited to the contrary are where the entry was made and the road built with the consent of the owner bringing suit. *McAuley* v. *Western Vt. R. Co.* 33 Vt. 311; *Knapp* v. *McAuley*, 39 Vt. 275; *Troy & Boston R. Co.* v. *Potter*, 42 Vt. 265. This entry and continuance in possession was wholly without the consent of these owners.

It is argued, however, that this suit in equity cannot be maintained in this court because the remedy, if any, is at law. The expression "ordinary courts of law," in the statute, does not appear to mean courts only where legal, as distinguished from equitable, remedies are administered, but seems to include courts of equity, which are, in a general sense, courts of law, when the owner needs or is entitled to equitable relief. This view is not much controverted in behalf of the defendants; but it is contended that there is no ground here for equitable relief. The remedy by writ of partition at common law was very limited. Co. Lit. 167*a*. Consequently, courts of equity in very early times took jurisdiction, and have always maintained it. 1 Story, Eq. tit. "Partition;" *Miller* v. *Warmington*, 1 Jac. & W. 484; *Earl of Clarendon* v. *Hornby*, 1 P. Wms. 446; *Gay* v. *Parpart*, 106 U. S. 679; [S. C. 1 Sup. Ct. Rep. 456.] The statutes of the state make ample provision for partition, but the proceedings are sessions proceedings, which can only be carried on in the state courts, and not civil suits at common law, of which this court has concurrent jurisdiction with the state courts. Rev. St. § 629. If this court has jurisdiction of partition at law at all, it is only of the writ of partition at common law, upon which nothing could be done but to divide the lands, without power to assign to one and decree or adjudge compensation to another. Lit. § 248; Nat. Brev. 19.

In that case, according to the claim of the defendants, such power may be very necessary, and relief, which can only be had in equity, be very appropriate. The orators, being non-residents, had the right to come into this court and institute such proceedings as this court has jurisdiction of appropriate to their case, which is a suit in equity.

The jurisdiction in equity depends upon the power to decree conveyances largely, and the parties who may be required to make conveyances should all be before the court. *Gay* v. *Parpart*, 106 U. S. 679; [S. C. 1 Sup. Ct. Rep. 456.] When they are infants or under other disability, and cannot be made parties, the partition proceeds, but in such manner as to save their rights until their arrival at full age or the disability is removed. 1 Story, Eq. "Partition." By the statutes of the

state, administrators may be authorized to sell lands of their intestates belonging to heirs residing out of the state, the proceeds to be assigned to those entitled to the lands. Rev. Laws, §§ 2170, 2171. Should such authorization be produced there would be nothing in the way of a decree assigning the whole to the defendants, requiring conveyances on making payment. Should it not be, the partition can proceed as to others, saving the rights of these minors until full age. The land is not partible without disproportionate injury to the defendants, and should be all assigned to them on making just compensation to the orators. It has apparently been made indivisible by the erections and constructions of the defendants, with which the orators, and their ancestors from whom they derive title, have had nothing to do. The orators cannot have their full rights under the constitution unless payment is actually made before assignment and conveyance. They will be entitled to have the land, as it would be without what the defendants have placed upon it, divided, and to be put in possession of their share, unless such payment is made within some reasonable time to be fixed.

The state and the riparian owners together had, certainly, the right to erect wharves on this front of navigable water; at least, to any extent that would not interfere with the public use of the waters. *Martin* v. *Waddell*, 16 Pet. 367; *Dew* v. *Jersey Co.* 15 How. 426; *Yates* v. *Milwaukee*, 10 Wall. 497; *Ry. Co.* v. *Renwick*, 102 U. S. 180. The act of the state legislature in passing the statute giving the riparian propietors the right to build and own docks or wharves, (Rev. Laws, §§ 1919, 1920,) was a grant of such rights in that direction as the state had, and after that the riparian owners were vested with the full right to make such erections in the waters of the lake and own them. *Crocker* v. *New York*, 15 Fed. Rep. 405. This right was appurtenant to this land, and when the railroad company entered they entered upon this right to this common land, and when the wharf in front of this common land was built under the Rutland Railroad Company it was built upon the right acquired of Nelly Austin, one of the tenants in common, as well as upon the rights acquired of the owners of the other half of the land. When the estate for her life ceased, her share passed to the orators, and this accretion to it passed with it. *Washburn* v. *Sproat*, 16 Mass. 449. They are tenants in common with the defendants of so much of the wharf as is in front of this land, as a part of the estate in the land. They may not, however, be entitled to share in the wharf without bearing, in some form, a just share of the expense of this improvement. 1 Story, Eq. § 655.

An objection is taken by the defendant the Central Vermont Railroad Company that it is a receiver of other railroads, and a lessee of this by leave and order of the court by which it was appointed, and accountable there for its doings under the lease, and not else-

where. It was not, however, appointed receiver of this land, nor of anything in controversy in this suit, and this objection cannot prevail.

According to these views, there must be a decree for the payment to the orators of the value of their interest in the land and dock, to be ascertained by commissioners, upon making valid conveyances of their rights, within some reasonable time to be fixed, and for a partition of the land and dock, and possession of their share, in case of failure to make payment. In order to ascertain fully the rights of the parties, the report of the commissioners should show the value of the land and dock in front of it, with the railroad tracks off from it; the cost of that part of the dock, and the depreciation to the time of the accruing of the orators' title; the value of the lot, with its right to erect a wharf without the wharf now there; the value of the rents and profits since the accruing of the orators' title; and a just division of the lot, and of the lot and dock, in case payment be not made.

An interlocutory decree for the orators for the appointment of commissioners is to be entered accordingly.