## UTAH POWER & LIGHT CO. v. UNITED STATES.

### No. J–670.

Court of Claims.
June 16, 1930.

This case having been heard by the Court of Claims, the court, pursuant to the stipulation of the parties, makes the following special findings of fact:

(1) The plaintiff on January 2, 1915, leased from the Utah Light & Traction Company, successor in interest of the Utah Light & Railway Company, the works and property located upon certain public lands of the United States described as follows, to wit:

All lands of the United States lying in sections 20, 19, and 30 in township 2 south, range 2 east, Salt Lake base and meridian.

(2) The aforesaid works are known as the Granite plant, were and are built in part upon the said land, and plaintiff and its said predecessors have been for many years in possession of and have operated them for the generation of electric power in Big Cottonwood Canyon, Salt Lake county, Utah.

(3) On September 23, 1912, the United States filed a bill of complaint against the Utah Light & Railway Company in the District Court of the United States, District of Utah, Central Division, in equity, No. 397, alleging unlawful occupancy and possession of the said premises, praying for an injunction against operation of the said works, and asking for other relief. Whereupon, upon trial of the cause, a decree was entered July 6, 1914, enjoining maintenance and operation of the said works. On October 5, 1914, the Utah Light & Traction Company was by order of court substituted as party defendant.

Upon appeal to the Circuit Court of Appeals, Eighth Circuit, this decree was re-versed, November 24, 1915, and the cause remanded for further proceedings on the ground that the defendant below might have acquired, and probably did acquire, certain vested rights with respect to some of the works constructed and completed prior to the Act of May 14, 1896 (29 Stat. 120 [43 USCA § 957]), which were denied to it by the decree entered.

Thereafter, on April 3, 1926, the lower court, pursuant to mandate, entered a final and amended decree, agreed to by stipulation of the parties, among other things declaring and adjudging the Utah Light & Traction Company "to have a right of way for a diverting dam, reservoir and flume, and waterway, for use in the operation and maintenance of defendant's [Utah Light & Traction Company's] so-called 'Granite' plant [aforesaid], in, upon, over, and across the land of the United States as now located upon the said lands of the United States, to wit: All lands of the United States lying in sections twenty (20), nineteen (19), and thirty (30) in township two (2) south, range two (2) east, Salt Lake base and meridian," more particularly described in said amended decree, and finally, that the decree should "be without prejudice to the rights of the defendant to make application to Congress or to a court of competent jurisdiction for refund of any amount of money heretofore paid to the United States for the occupancy of the said lands of the United States used in connection with the said 'Granite' plant. * * * "

(4) The decree referred to in the preceding findings was entered by oral stipulation of the parties to the action in which it was rendered, the United States being represented by its attorney, who was specially authorized by the Attorney General of the United States to agree thereto, and was in conformity with an agreement made for the settlement and final disposition of the case theretofore made between the parties to the action.

(5) In 1917 the sum of $10,068 was paid by the plaintiff upon demand of the United States, through the Forest Service, on account of charges accrued to July 30, 1917, for the occupancy and use of public land on which the Granite plant was in part built. Thereafter, from 1918 to 1925, inclusive, the plaintiff paid annually the sum of $615 as rental on account of the Granite plant; the payments so made from 1918 to 1925 amounting to $4,920. On account of the Granite plant, plaintiff has paid a total of $14,988. After 1925 plaintiff made no payments as rental on account of the Granite plant.

Francis W. Clements, of Washington, D. C. (Alexander T. Vogelsang, of San Francisco, Cal., and Lawrence H. Cake, of Washington, D. C., on the brief), for plaintiff.

John E. Hoover, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Charles F. Kincheloe, Elton L. Marshall, and H. H. Clarke, all of Washington, D. C., on the brief), for the United States.

Argued before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

GREEN, Judge.

The plaintiff brings this suit to recover $14,995 alleged to have been wrongfully collected from it by defendant for use of land occupied by a certain power plant belonging to plaintiff known as the Granite plant. It bases its right to a refund of the money so paid upon, first, the Act of March 4, 1907 (34 Stat. 1270), which in substance and effect provided for the refund of money paid "for the use of any land or resources of the national forests in excess of amounts found actually due from them to the United States"; and second, a decree entered by the United States District Court for Utah in a suit wherein the defendant herein was plaintiff and the Utah Light & Traction Company (predecessor in interest to the plaintiff herein in and to the land involved in the case at bar) was defendant, which adjudged that plaintiff's predecessor had "a right of way for a diverting dam, reservoir, and flume, and waterway, for use in the operation and maintenance of defendant's [Utah Light & Traction Company's] so-called 'Granite' plant."

This case has previously been before this court on a demurrer to the petition, which was overruled. 67 Ct. Cl. 602. It has now been submitted on its merits, and in our opinion the ruling heretofore made on the demurrer practically determines the judgment which should now be entered. In the former opinion, after quoting from the decree entered in the case heretofore tried between defendant and plaintiff's predecessor, the same language as was above set out, and further stating that the allegations of the petition were that plaintiff had made total payments upon demand of defendant in the sum of $14,995 from 1917 to 1925 as rental for a right of way for its dam, reservoir, flumes, and waterway, in connection with its Granite plant, the court said:

"This state of facts admitted on demurrer would relieve plaintiff from making said payment of $14,995, which sum was in excess of amounts due the United States."

The facts above stated as being admitted by the demurrer are established by the evidence and conceded to exist. Therefore, if we follow the ruling which this court has heretofore made, judgment must be in favor of the plaintiff.

While counsel for defendant do not so state, we are asked in effect to reverse our former holding in order to enter a judgment in favor of defendant. The argument made on behalf of defendant is in substance that the decree of the District Court of Utah to which reference has been made above is not binding on this court, for the reason that it was merely a consent decree. Counsel for defendant contend that consent decrees do not make the matters therein recited res adjudicata, and that the recital in the decree that plaintiff's predecessor had a right of way, etc., is subject to review by this court, and is not "conclusive as to all facts necessary to support the judgment entered."

We think the proposition that consent decrees do not make the matters therein recited res adjudicata cannot be laid down as a general rule, for the exceptions to it are more numerous than the cases to which it is applicable. The authorities cited by counsel for defendant in support of this proposition will be discussed further on. As the question in the case is whether the rights of the parties were conclusively determined by the final decree entered in the District Court after the case had been remanded from the Circuit Court of Appeals, it becomes necessary to consider what were the issues in the case, the recitals of the decree, and, being a consent decree, whether the person or persons who consented thereto on behalf of the government had authority so to do.

The findings show that the United States filed its original bill of complaint against the Utah Light & Railway Company (predecessor in interest to the plaintiff herein) in the District Court alleging in substance that the plaintiff herein unlawfully occupied and held possession of the premises involved in this suit, namely, the lands occupied by its so-called Granite plant, and being the premises involved in the case at bar. Upon this allegation (with others not material herein) issue was joined, the case went to trial, and a decree was entered in favor of the government. From this decree an appeal was taken to the United States Circuit Court of Appeals. The case was submitted to that court and an order entered setting aside the de-

cree entered in the District Court and remanding the case for further proceedings in accordance with directions given by the appellate court. Subsequently, and after some negotiations between the parties to the case, it was agreed that a decree should be entered by the District Court in settlement of the issues involved in the case which pertained not only to the premises occupied by the Granite plant but also to the premises occupied by a plant called the Stairs plant.

The decree entered by the lower court on April 3, 1926, was made pursuant to the mandate of the Court of Appeals and agreed to by a stipulation of the parties. Among other things, it declared and adjudged the Utah Light & Traction Company "to have a right of way for a diverting dam, reservoir and flume, and waterway, for use in the operation and maintenance of defendant's [Utah Light & Traction Company's] so-called 'Granite' plant [being the plant involved in the case at bar], in, upon, over, and across the land of the United States as now located upon the said lands of the United States." The decree further went on to more specifically describe the lands referred to in that part of the decree set out above. The decree also provided that it should "be without prejudice to the rights of the defendant to make application to Congress or to a court of competent jurisdiction for refund of any amount of money heretofore paid to the United States for the occupancy of the said lands of the United States used in connection with the said 'Granite' plant." The evidence also shows that during the pendency of the suit in 1917 $10,068 was paid by the plaintiff upon demand of the United States on account of charges accrued to July 30, 1917, for the occupancy and use of public land on which the Granite plant was in part built. Thereafter, from 1918 to 1925, inclusive, plaintiff paid annually to defendant the sum of $615 as rental on account of the Granite plant; such rental payments amounting in all to $4,920. The total payments made by plaintiff to defendant on account of the land used by the Granite plant amount to $14,988.

It will be seen that the whole question in the case wherein the decree was rendered so far as the Granite plant is concerned was whether the plaintiff's predecessor had the right to occupy the premises upon which the Granite plant was in part erected, and that the court made a specific adjudication upon this point, stating that the plaintiff's predecessor had the right of way for use in the operation of the plant over the lands of the United States. It is obvious that, if this decree is binding upon the defendant, there was nothing due the government for the use of these lands, and the money collected for the use thereof comes under the provisions of the Act of March 4, 1907, and must be refunded. Some argument has been made based upon the provision of the decree to the effect that it should "be without prejudice to the rights of the defendant to make application to Congress or to a court of competent jurisdiction for refund of any amount of money heretofore paid to the United States for the occupancy of the said lands of the United States used in connection with the said 'Granite' plant. * * *" This provision seems to have been made to avoid the inference which otherwise might have been drawn that the decree, being a settlement decree, settled all matters which pertained to the Granite and Stairs plants. By this provision it was made plain that the plaintiff might bring the suit which is now being presented to this court. While this is the only direct reference in the decree to the claim which the plaintiff is now presenting, it is quite clear that the matter now in controversy was involved in and concluded by its terms. If the plaintiff had a right to use the land, manifestly the defendant had no right to demand or receive anything for the use of it.

When we consider the circumstances under which the decree was entered, we find that it is clear that the party who appeared for the government had authority to settle the case and agree to a decree. In the absence of any evidence, it is probable that his appearance in the case would presumptively be authorized, but the evidence goes further and shows that he was in communication with the Attorney General, and the decree was entered in accordance with instructions received from that officer. If, by reason of the decree having been entered by consent, the judgment which forms part of it is not in fact an adjudication of the issues in the case in accordance with its recitals, then, in all the numerous cases in which final decrees have been entered by federal courts in accordance with the agreement between counsel for the government and counsel for the other party to the action, the decree is not binding upon the parties, and becomes of no force and effect. The establishment of such a doctrine, we think, would not only surprise the legal profession generally, but render a final settlement of cases pending in courts practically impossible.

In this connection it should be noted that the decree which was entered by consent was in settlement of the case. As to the Stairs plant, the decree was against the Utah Light & Traction Company; as to the Granite plant, in its favor. It is now urged that the evidence shows that the plaintiff had not in fact completed the Granite plant at the time of the enactment of the Act of May 14, 1896 (29 Stat. 120), and that, by reason of the provisions of this statute, the plaintiff never acquired any right in the public lands which the works of this plant occupied. Defendant's counsel go even farther, and insist that the burden of proof is upon the plaintiff to show a completion of the plant prior to the enactment of this statute and cite a number of decisions where the right of a power company to occupy public land was involved in support of this contention. If we were trying anew the case in which the decree was rendered or had it before us de novo on an appeal, we might appropriately consider these decisions, but the question of the right of the plaintiff's predecessor to use the land which was occupied by its Granite plant has been tried and decided by a court of competent jurisdiction, and we cannot now review this decision, even though evidence is offered upon which a different judgment might be reached. As counsel for defendant contend that the rule is otherwise, we will briefly discuss the cases which are cited in support of their contention.

In Lawrence Mfg. Co. v. Janesville Mills, 138 U. S. 552, 11 S. Ct. 402, 405, 34 L. Ed. 1005, the plaintiff sought to have a former consent decree extended and then enforced and the court said:

"But where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill."

Accordingly, the court held that it was at liberty to inquire whether circumstances justified the relief asked, and, the former decree having been entered by consent, the court had the right to decline to treat it as res adjudicata. But in the case at bar no modification of the former decree is sought, the plaintiff stands on the decree as it is, and the case is not one in which a new trial of the former action can be had.

Texas & Pac. Ry. Co. v. Southern Pac. Co., 137 U. S. 48, 11 S. Ct. 10, 34 L. Ed. 614, has no application. The point involved therein, so far as it has any bearing on the case under consideration, was merely a question of the scope of a decree. An examination of this case, which seems to be especially relied upon by counsel for defendant, will show that the court did not pass upon the validity of the agreement upon which the decrees were entered, but merely determined that this matter was neither in controversy nor passed upon in the causes in which the decrees were rendered. In short, instead of holding that the consent decree had no validity as an adjudication, the court simply held that it did not cover the matter involved in the case under consideration.

In Kelley v. Milan, 127 U. S. 139, 8 S. Ct. 1101, 32 L. Ed. 77, a consent decree entered pursuant to an agreement or stipulation made by the mayor of the town was held not to be an adjudication because the mayor under the law of the state had no authority to make such an agreement. In the case at bar there is no question about the authority to enter into the stipulation upon which the judgment was based.

Gay v. Parpart, 106 U. S. 679, 1 S. Ct. 456, 27 L. Ed. 256, seems to have been misunderstood. In Harding v. Harding, 198 U. S. 317, 335, 25 S. Ct. 679, 684, 49 L. Ed. 1066 (a case in which a consent decree was held to be a final adjudication), the court said with reference to Gay v. Parpart, supra, that it "dealt merely with the right of a court of equity to refuse to lend its aid to enforce an incomplete and ineffective decree in partition proceedings, because to do so would be inequitable."

Railway Co. v. Stewart, 95 U. S. 279, 24 L. Ed. 431, is merely another case where the scope of a consent decree was considered, and it was held not to be a bar to the action before the court. On the other hand, the Supreme Court has gone so far as to hold that a decree in equity by consent of parties and upon a compromise between them is a bar to a subsequent suit upon a claim therein set forth as among the matters compromised and settled, although not in fact litigated in the suit in which the decree was rendered. See Nashville, Chattanooga & St. Louis Ry. Co. v. United States, 113 U. S. 261, 5 S. Ct. 460, 28 L. Ed. 971. The true rule with reference to a consent decree is that, as it has the sanction of the court and is entered as its determination of the controversy, it has the same force and effect as any other judgment, and, in the absence of fraud or mistake, is valid and binding as such between the parties thereto and their privies. So far as it goes it stands as a final disposition of the rights of the parties thereto. It may be invalidated by

a fraud or mistake; it may be shown that the party who consented thereto had no authority to give such consent; if it is incomplete, and one of the parties thereto seeks to add to or change its provisions, the court may inquire into the justice of the whole decree; if it is ambiguous or indefinite as to its scope or application, the court may turn to the original agreement upon which it is based in order to determine how it should be construed, for it is in fact the agreement of the parties. But in the case at bar none of these considerations apply. As before stated, there can be no question as to the authority of the attorney who agreed to its rendition on behalf of the defendant. No modification of the decree is asked by the plaintiff. There is no ambiguity in the decree, and its terms are so explicit as to practically exclude even argument as to its scope or construction. Even if it should be found that there was some reason why we should consider the agreement upon which the decree was based, the evidence shows that the decree was entered strictly in accordance with the agreement. On the whole, we are clear that no facts or circumstances exist which authorize us to hold that the decree under consideration is not a final adjudication binding upon the parties to this action.

It follows that plaintiff is entitled to recover the amount collected from it by defendant for the use of the premises occupied by the Granite plant, and judgment will be entered accordingly.

This case was tried before the appointment of WHALEY, Judge. He therefore took no part in its decision.