SIMMONS, Trustee, *v.* BAYNARD and others.

*(Circuit Court, D. South Carolina.* April 15, 1887.)

1. PARTITION—DECREE—CONCLUSIVENESS—APPEARANCE.

In a suit for partition, all the parties interested were made parties, either plaintiffs or defendants, and all the defendants were served. Many of the defendants filed no answer. They were all represented by counsel, but no formal appearance was entered, and no notice of appearance filed. These attorneys consented in writing to all orders, without stating for whom they consented. *Held,* that the irregularity did not relieve the parties from being bound.

2. SAME—INFANTS.

Certain minors were served, but no petition for guardian *ad litem* was presented, and no appointment was made. But their father filed an answer, as guardian *ad litem,* for them, with a formal consent to act as such guardian. *Held,* since in equity infants are treated as wards of the courts, the decree binds them.

3. TRUST—SALE UNDER—BILL TO CONFIRM.

Plaintiff purchased at the sale under the former proceedings in partition as a trustee of all the parties. In attempting to sell the property in the execution of his trust, he met with a grave doubt and a denial of the quantity of land conveyed to him, and it was alleged that the proceedings under which he held were irregular and invalid. The validity of the proceedings depended on matters not of record. *Held,* that he was entitled to obtain authority to convey from the courts by a suit to confirm his sale, to which all interested in the sale were made parties.

4. COSTS—PARTITION.

These proceedings, having been caused by the failure of the record to disclose the parties represented by the attorneys who appeared, and in partition it being the duty of all the parties to see that the record is perfect, the fund must bear the costs.

5. TRUSTS—SPECIAL POWER OF SALE—EXERCISE OF.

The trustee was empowered to sell at private sale, before November 5, 1883, for not less than $6,000; and on November 5, 1883, at public sale in Charleston, South Carolina, he sold on that day, but the purchaser failed to comply with his bid. Instead of compelling him to take the title, he advertised and sold again to one who sold to I. T. H. and I. F. H., parties to this proceeding. *Held,* that the first sale exhausted the power, so that the second sale was void.

6. LIMITATION OF ACTIONS—CONCEALMENT—FRAUD—BANKRUPTCY.

W., one of the parties interested in the lands, became a bankrupt in 1868. His schedule failed to mention his interest therein. The assignee took no steps to correct the omission. In 1876, W. gave a deed to his father as trustee. The trustee took possession, and the deed was recorded. *Held,* that this was not such a fraud as prevented the statute of limitations from running, since the essential element of concealment was wanting, the deed having been placed on record.[1]

---

[1]As to the effect of fraud and fraudulent concealment on the running of the statute, see Manufacturers' Nat. Bank v. Perry, (Mass.) 11 N. E. Rep. 81.

In Equity.   Bill to confirm sale by trustee, and general relief.

Certain plantations, (Yonges island and Anna Vista,) held in common by adults and infants, were sold for partition under an order of court. They were bid in by W. C. Simmons, who acted in the interest of all parties to the suit, at the request of the adults.   His purchase was reported by the special master, and was confirmed by the court on certain conditions.   Thereupon a conveyance of the lands was executed to W. C. Simmons, as trustee, among other things in trust to sell.   He did sell, and the purchaser failed to comply with his bid.   Some months afterwards he sold again.   The purchaser at the second sale raised certain objections, among other things as to the validity of the proceedings under which the trustee was appointed and held.   The bill was filed to remove these doubts.

*Barker, Gilliland & Fitz Simons*, for complainant.

*H. E. Young, Inglesby & Miller, Smythe & Lee*, and *T. M. Mordecai*, for defendants.

SIMONTON, J.   The first question which presents itself in this case is as to the validity and effect of the proceedings in the main cause of *Baynard* v. *Mikell*.   All of the parties interested in the property sought to be partitioned were mentioned in these proceedings, either as plaintiffs or defendants.   All of the defendants, adults and infants, were served with subpœna, the latter personally.   Of the adults so served, E. S. Mikell, trustee, Thomas S. Waring, Josephine G. Waring, and Mrs. Sarah G. Simmons, perhaps others, filed no answer to the bill.   They were all represented by attorneys, but no formal appearance was entered, and no notice of appearance was filed.   These attorneys consented in writing to all orders in the cause, without stating for whom they consented.   The proceedings were irregular.   Are they invalid?   When a bill is filed, and defendants are served, the complainant is entitled to an answer, for he has a right to discovery.   This right, however, he may waive.   So, also, the defendant has a right to answer, if he exercise it in proper time.   But he can omit or waive the exercise of this right. In this case the defendants did not answer.   The complainants made no objections.   When the orders were taken, the parties in person, or their attorneys in court, assented to the orders passed.   They are bound. *Cupel* v. *Butler*, 2 Sim. & S. (1 Cond. E. C. 457;) *Finley* v. *Robertson*, 17 S. C. 440.

All of the minors but the Grace infants were represented by guardians *ad litem*, regularly appointed and answering.   No petition for guardian *ad litem* for the Graces was filed, and none was appointed by the court. Their father, James W. Grace, filed an answer as guardian *ad litem* for them, with a formal consent to act as such guardian.   This is irregular. Are these infants bound?   The subpœna made them parties, and brought them before the court.

"Whenever [says Story, Eq. Jur. § 1352] a suit is instituted in the court of equity relative to the person or property of an infant, although he is not under any general guardian appointed by the court, he is treated

as a ward of the court, and as being under its special cognizance and protection."

The formal answer of the guardian *ad litem*, submitting the rights of the minor to the protection of the court, is the practical recognition of this doctrine. As soon as the court is judicially informed that the parties are infants, their rights are protected by the court, and the decree binds them.

In *Bulow* v. *Buckner*, Rich. Eq. 401, realty in which infants were interested was sold, and the sale sustained, although the infants themselves were not before the court.

In *Bulow* v. *Witte*, 3 S. C. 318, the infants were not served with process in proceedings involving their rights to realty, yet they were held to be bound, because the attention of the court was called to the fact, and on its motion a guardian *ad litem* had been appointed for them; that is to say, the court saw that they were represented.

In the case we are examining the father of the infants came into court, called the attention of the court to the minority of his children, and submitted their rights to its protection; if, as is said in *Bulow* v. *Witte*, "the sole purpose of the service of the subpœna on infants is to attract the attention of their friends, that a due regard may be had to their rights, and that the mind of the court may be directed to them." *Bulow* v. *Witte, supra*, 321. All of this was accomplished. The father was notified of their rights. He acted on the notification. He craved for them in formal answer the protection of the court. As between the parties to that suit, adults and minors, the proceedings are binding.

But, if this be so, it may be asked, where is the necessity for the present proceedings?

W. C. Simmons, the complainant in this case, was but a nominal party in the first case. He was selected to buy in the property in the interest of all the parties thereto, hold, lease, and sell the same. He accepted the trust, paid the cash required, and took a conveyance of the property in which the trusts were distinctly declared. Of course he was bound to protect his title. In an attempt to sell the property in the strict exercise of his power, he met with a grave doubt, and denial of the quantity of land conveyed to him. In attempting to get possession of the property, he met with resistance which was so pronounced as to require the aid of this court. He held in himself the entire legal title. The use was not and could not have been executed in him, for certain specific charges were laid on the property in his hands, and certain duties were to be performed by him. It was alleged that the proceedings under which he held were irregular and invalid. As we have seen, this is not so, as between the parties. But the validity of the proceedings depends on matters then not of record, but existing in parol. The defendants who had not answered were represented by counsel. The record does not show whom these gentlemen represented. Third parties could very well refuse to treat as final the result of these proceedings, or accept title under them, so long as proof of these important points was in parol only. Thus we see that he held the property upon certain active

trusts. He could not convey, even if he had the power to convey, because his authority to convey depended upon matters not of record. He could not fulfill his trusts without conveying, and, if he had no power to convey, he must get such power from this court. In every event, therefore, these proceedings were necessary. Upon whom must the cost of the proceedings be cast? One essential irregularity of the former case was the failure of parties to enter regular appearance, and to answer. In assenting to the orders, their attorneys did not state for whom they consented. No objection was taken to this by any party in the case. It is the duty of every party, in a cause for partition, to see to it that, in every step taken, there should be full protection to the title, to be made under the proceedings. Whatever may be the decree, whether by way of allotment or partition, or for a sale, the successful conclusion, in which every party is interested, depends upon the validity and regularity of each step. If, therefore, any one party fail to enter an appearance, or to file his answer, or to put on record his consent, if this be necessary, it is the duty of every other party to see that the omission is corrected in proper time. If he does not do so,—does not exercise his right to do so,—he must share the result. It would not be proper to make any discrimination between the parties. The fund must bear the costs. The court next decide a question of fact, as to the quantity of land covered by the trust deed, and then go on.

We come now to the most important question in this case. The trustee sold the plantations, Yonges island and Anna Vista, on fifth November, 1883, at public auction, in the city of Charleston, to H. E. Young, attorney. The purchaser declined to accept the title of Yonges island, because some of the parties in the cause denied that a tract called "Big Field" was sold with it. Instead of compelling him to take the title, W. C. Simmons, trustee, again advertised the plantation Yonges island for sale, declaring in the advertisement that it included Big Field; and on eighth May, 1884, sold it at auction, in Charleston. One Bart was the purchaser at this sale, and he has transferred his bid to I. T. and I. F. Hart, who are parties hereto. The Harts, in the examination of the title, found certain objections, and one of the purposes of these proceedings is to cure these. The question, however, is, did the trustee have the power to make this second sale? As we have seen, the court confirmed the report of the master recommending that the purchase made by Simmons, in the interest of all the parties to the suit, be recognized and approved. Thereupon the master made conveyance of the lands to Simmons in fee, he paying the costs of the case, some $350. The trusts of the deed are as follows:

"To hold the same charged with the payment of such costs and counsel fees as are not paid out of the cash, as above provided, and, after such payment, for the use, benefit, and behoof of the parties reported by the master in the main report in the case aforesaid, as entitled to the said property in the proportions therein specified, with power to the said W. C. Simmons to lease out or sell the said property for the benefit of the said *cestuis que trustent:* provided, that the said property shall not be sold at private sale for less than six

thousand ($6,000) dollars, and if not so·sold by the sale's day in Novemb r, 1883, then to be sold on that day, at public outcry, in the city of Charlest n, to the highest bidder."

This is not a mere naked power. It is a trust accompanied by a power. Powers, as Chief Justice WILMOT observed, are never imperative. They "leave the· act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted." *Stanley* v. *Colt,* 5 Wall. 168.

Under the trust, the trustee has a power to lease and sell; but this power, expressed in these general terms, is limited. He has no discretion, except as to the terms of sale. If he sells at private sale, he must get at least $6,000. He cannot sell at private sale after sale's day in November. If he fails to get the price by the said sale's day, *on that day* he must sell at public outcry, in the city of Charleston. This qualification is not repugnant to the power of sale given in the deed; nor is it inconsistent with it. It explains how, when, under what restrictions, the power is to be exercised. The proviso works no forfeiture of the estate of the trustee. Notwithstanding any omission or failure to sell on the day named, he would still be a trustee to hold, etc. To use the language of the case above quoted, "it expresses simply a limitation in the trust."

The trustee then had power to sell at private sale until the sale's day in November, and, if not so sold, then to sell on that day at public outcry, in the city of Charleston. No one will deny that he could sell only at public outcry, and that the only place of sale was the city of Charleston. Why, then, is not the other provision, "sell on that day," equally peremptory? It will be observed that he did sell on that day; that he completed all that he had to do; and that he had a purchaser under a completed sale. If, notwithstanding this, he could sell again on some other day, he must have the power, either from the words of the instrument creating his office, or from the plain intendment of the deed. There are no·express words. Does this intention appear in the deed? He was selected and confirmed trustee, as the substitute or representative of all the parties in interest, and the first purpose was that he should hold the property charged with certain claims for the use, benefit, and behoof of these parties. That was the main purpose. There was a supercradded qualified power of sale,—not to sell at discretion, but, if the sale was private, he was limited in price; if he sold at public sale, he was limited as to time,—a time and day of which the deed advertised all parties.

In *Richards* v. *Holmes,* 18 How. 147, (on which case the purchaser lays great stress,) the trustee had authority to sell at public auction to the highest bidder, or at private sale for cash or credit, according to his discretion, after having given at least 30 days' notice by advertisement. He put up the property, but did not sell. He.adjourned the sale. The court held that. he could do this under the custom of. auction. "A sale regularly adjourned, so as to give.notice to all persons present of the time and place to which it is adjourned, is, when made, in effect the sale of which previous notice has been given." This is not the case

here. The sale in November, and the subsequent sale, cannot, even by the straining of language, be the same sale.

In *Olcott* v. *Bynum*, 17 Wall. 46, the trustee had a full and unlimited power to sell at his discretion.

In *Markey* v. *Langley*, 92 U. S. 148, the sale was made under order of court.

In *Creighton* v. *Pringle*, 3 S. C. 95, property was held under marriage settlement by trustees. One of the things declared of this property was that the trustee could sell or dispose of the property settled on the written request of the husband and wife, or the survivor of them, and hold the proceeds subject to the same declarations and limitations, etc. The trustees sold on request of the husband and wife. The question was this: Were they, in all subsequent changes of investment, subject to the condition, or was it exhausted by its first exercise? not whether the power of the trustees was exhausted. The court held that the consent of the *cestuis que trust* was necessary in changes of investment. If the property reinvested was to be held to the same uses, intents, trusts, and purposes, and subject to the same declarations and limitations, this conclusion was inevitable.

An examination of the cases quoted by the counsel for the purchasers has not enabled me to discover in which way the trustee under this deed can be excepted from the rule. "A power of sale, like all other powers, can be exercised only in the mode, and upon the exact conditions, terms, and occasions, prescribed in the instrument of trust." Perry, Trusts, § 783. "The general rule is rigidly adhered to, that powers can be executed only in the mode, and at the time, and upon the conditions, prescribed in the instrument creating the power or the trust." Perry, Trusts, § 511. The power of sale permitted in the deed of trust was exhausted by the sale on fifth November, 1883, and could not be again exercised, except under decree.

But one other question remains. Waring became a bankrupt in 1868. His schedule did not contain any mention of his interest,—a vested interest,—in these lands. No steps were taken by the assignee to correct this omission. Without doubt, he knew nothing about it; nor was there anything to call his attention to it. But, in 1876, T. S. Waring executed and delivered a deed to his father, as trustee, in consideration of $1,000. By this deed he conveyed his interest in these lands in fee, in trust for Josephine G. Waring, for life, remainder in fee to his two daughters. The trustee had possession. The deed was placed on record in the proper office. It gave notice to the world of an adverse claim. It also gave a right of action to the assignee against the claimant. Under ordinary circumstances, a failure to prosecute this right would bar the assignee after the lapse of two years. Rev. St. U. S. 5057. *Bailey* v. *Glover*, 21 Wall. 346.

This was a fraud upon the assigned estate, and it is maintained that the statute did not begin to run until the discovery of the fraud; that is to say, until assignee was actually informed of it. The general doctrine is recognized in this court. *Bailey* v. *Glover, supra.* The rule,

however, proceeds upon the idea of concealment by the party setting up the statute, and seeking an advantage therefrom. *Massachusetts Turnpike Co. v. Field*, 3 Mass. '201.

The rule, and the reason for the rule, are stated forcibly and tersely in *Beattie* v. *Pool*, 13 S. C. 383:

"It has been placed on the ground that it would be against conscience for a party to avail himself of the statute when, by his own fraud, he has prevented the other party from knowing or asserting his rights within the prescribed period."

In this case the parties now claiming—that is to say, the trustee, and those for whom he held—made no concealment. They put their deed on record, and published their claim. The rule does not apply. The assignee is barred by the statute.

Let a decree be entered in accordance with this opinion. .