### INTERNATIONAL BLDG. CO. v. UNITED STATES.

#### No. 14465.

United States Court of Appeals, Eighth Circuit.

Sept. 19, 1952.

Malcolm I. Frank, St. Louis, Mo., for appellant.

Melva M. Graney, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson and Carolyn R. Just, Sp. Assts. to Atty. Gen., and George L. Robertson, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action is for recovery of income taxes, declared value excess profits taxes, and excess profits taxes for the years 1943, 1944 and 1945. The controversy arises from the Commissioner's disallowance of depreciation on a 17-story building located at 8th and Chestnut Streets, St. Louis, Missouri, known as the International Building, for the years 1943, 1944 and 1945, and from the disallowance of attorneys' fees paid during the year 1944 in connection with a reorganization proceeding of the taxpayer corporation in the United States District Court under Chapter X of the Federal Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The material facts follow:

In 1906 and 1907 the office building in question was erected. At that time it was completed only to the extent of six stories. Later, eleven stories were added. The building was erected upon leased premises, the lease extending for a period of 99 years from December 27, 1905. In 1913 the taxpayer corporation was formed as a subsidiary of the Missouri Lincoln Trust Company. On April 14, 1913, the taxpayer acquired the leasehold by deed recorded May 1, 1913. The consideration for the acquisition of the building stated in the

taxpayer's minutes was all of its authorized common stock, consisting of 6,000 shares of common stock of a par value of $50 per share, and $300,000 face value first mortgage bonds. The only asset of the taxpayer was the building on the leasehold. May 1, 1913, is the base period for the fixing of the valuation for depreciation in this cause.

Beginning in 1920 the taxpayer claimed a basis for depreciation on the building of $860,000. This claim was based upon an alleged acquisition cost by taxpayer of $600,000, consisting of 6,000 shares of stock at $50 per share, equaling $300,000, and $300,000 face value 6 per cent mortgage bonds, totaling $600,000, plus $260,000 which it was alleged had been expended in the construction of the top eleven stories after taxpayer's acquisition of the building. This claimed valuation for depreciation was continued in the taxpayer's return from 1920 to 1939, inclusive. After 1939 the taxpayer claimed an additional value of $10,383 for additional capital invested in additions and betterments. Thereafter the claimed valuation for depreciation purposes was $870,383.

The Commissioner assessed a deficiency in income tax for the year 1933 against the taxpayer upon a determination then made by him that the value of the leasehold for depreciation purposes was $385,000 on May 1, 1913. Taxpayer filed a petition for review of this assessment with the Board of Tax Appeals and continued to make its returns as above noted, upon the basis of a valuation for depreciation of $860,000. Again for the years 1938 and 1939 the Commissioner assessed a deficiency in the taxpayer's income tax on the basis that the value of the leasehold for depreciation purposes was $385,000 on May 1, 1913. The taxpayer again filed a petition to review these later assessments with the Board of Tax Appeals. In these petitions for review the taxpayer contended that the value of the building for depreciation purposes was $860,000. That appears to have been the only issue involved in those proceedings. On October 11, 1944, both of the appeals to the Board of Tax Appeals were settled by stipulations. Those stipulations and the order which the taxpayer now claims to have been a final judgment finally determining the value of the building for depreciation purposes at $860,000 are set out in the margin.[1] In neither of these cases before the Board of Tax Appeals

---

1.                                    "Exhibit C.

(Filed in the Tax Court of the United States on October 11, 1944.)
The Tax Court of the United States.

International Building Company,
                      Petitioner,
              vs.                              Docket No. 104020
Commissioner of Internal Revenue,
                      Respondent.

Stipulation.

It is hereby stipulated that there is no deficiency in Federal income tax due from the Petitioner for the taxable year 1933 and that the following statement shows the petitioner's Federal income tax liability for the taxable year 1933:

Tax liability _____ None
Assessment (Jeopardy):
        January 23, 1942 (Not paid) _____  $2,188.12

Assessment to be abated _____ $2,188.12

                              Wm. M. Fitch,
                              Malcolm I. Frank,
                                 Counsel for Petitioner.

                              J. P. Wenchel,
                                 Chief Counsel,
                                 Bureau of Internal Revenue.

was any hearing held or argument made upon the issues. No stipulation of facts was entered, no evidence was received, no briefs were filed. The trial court held, D. C., 97 F.Supp. 595, that the order of the Board of Tax Appeals is not res judicata in this action; the taxpayer contends otherwise.

### Exhibit C-1

The Tax Court of the United States.
Washington.

International Building Company,
Petitioner,
vs.
Commissioner of Internal Revenue,
Respondent.

Docket No. 104020

#### Decision.

Under written stipulation signed by counsel for the parties in the above-entitled proceeding and filed with the Court on October 11, 1944, it is

Ordered and Decided: That there is no deficiency in income tax for the calendar year 1933.

J. E. Murdock,
Judge.

Enter:
Entered Oct. 17, 1944.

---

### Exhibit D.

(Filed in the Tax Court of the United States on October 11, 1944.)
The Tax Court of the United States.

International Building Company,
Petitioner,
vs.
Commissioner of Internal Revenue,
Respondent.

Docket No. 105807

#### Stipulation.

It is hereby stipulated that there are no deficiencies in Federal income tax due from the petitioner for the taxable years 1938 and 1939 and that the following statement shows the petitioner's Federal income tax liabilities for the taxable years 1938 and 1939:

#### 1938

| | |
|---|---|
| Tax liability | None |
| Assessment (Jeopardy): | |
| January 23, 1942 (Not paid) | $ 61.73 |
| Assessment to be abated | $ 61.73 |

#### 1939

| | |
|---|---|
| Tax liability | None |
| Assessment (Jeopardy): | |
| January 23, 1942 (Not paid) | $ 500.52 |
| Assessment to be abated | $ 500.52 |

Wm. M. Fitch,
Malcolm I. Frank,
Counsel for Petitioner.

J. P. Wenchel,
Chief Counsel,
Bureau of Internal Revenue.

Another disputed question on this appeal arises out of the disallowance by the Commissioner for the year 1944 of the sum of $6,360 claimed by the taxpayer as a deduction for legal fees. In November, 1941, an action was instituted for the foreclosure of the $300,000 first mortgage bonds on the building in question. On November 12, 1941, the taxpayer filed a petition in the United States District Court at St. Louis under Chapter X, for reorganization in order to protect the property from foreclosure. A reorganization was effectuated. The District Court allowed the above amount as attorney fees to the attorneys for the bondholders, the attorney for the indenture trustee, and the indenture trustee.

In the trial of this case in the District Court that court was confronted with the problem of placing a value for depreciation purposes upon the building and the leasehold as of May 1, 1913. The testimony of a number of expert witnesses was taken on that question. Their opinions varied from a low of approximately $400,000 to a high figure of approximately $900,000, as of May 1, 1913. The Government, in addition to opinion evidence of experts, offered testimony relative to the reproduction cost new less depreciation as of May 1, 1913. It also offered in evidence the economic value as determined by the Hoskold's Formula.[2]

Since the property was acquired in 1913 by the payment of the 6,000 shares of common stock and the first mortgage bonds, the value of that stock as of that date was the subject of considerable testimony. The bonds having been sold for their face amount, their value was not and is not questioned. The evidence discloses that on May 14, 1913, after the taxpayer acquired the leasehold and the building, its parent company, the Missouri Lincoln Trust Company, which was also the parent company of the seller of the property to the taxpayer, credited its bond account with $300,000 on account of the bonds the taxpayer paid for the building, and for the 6,000 shares of stock also paid by the taxpayer for the building, the Missouri Lincoln Trust Company credited its stock account with $100,000. It appears that at that time Missouri Lincoln also charged off $24,525 which it had in this property, in addition to the $400,000 representing its valuation of the bonds and stock, as a loss. The trial court treated this transaction as some evidence that the value of the property was then considered to be $400,000. On May 20, 1913,

Exhibit D-1.
The Tax Court of the United States.
Washington.

International Building Company,
Petitioner,
vs.
Commissioner of Internal Revenue,
Respondent.

Docket No. 105807

Decision.

Under written stipulation signed by counsel for the parties in the above-entitled proceeding and filed with the Court on October 11, 1944, it is
Ordered and Decided: That there are no deficiencies in income tax for the calendar years 1938 and 1939.

J. E. Murdock,
Judge

Enter:
Entered Oct. 17, 1944."

---

2. Since it is questionable whether this formula applied, and since the trial court does not appear to have given it consideration in reaching its conclusion, we need not explain the formula. It does appear to have entered prominently into the valuation of $430,000 reached by the Commissioner.

Missouri Lincoln Trust Company offered to its stockholders the 6,000 shares of stock paid by the taxpayer in part payment for the building by subscription for a limited time at $18 per share. Only 434 shares were sold by the end of the time fixed, to wit, October 21, 1913. The evidence of this offering was received by the trial court over the objection of the taxpayer, who now contends that this evidence was improperly received because it was not a public offering and was therefore not evidence of fair market value. In 1917 the taxpayer had an argument with the Commissioner concerning the fair value of this stock in connection with its capital stock tax. The Commissioner then contended that the fair value of the stock was $348,607 and fixed it at that figure for purposes of capital stock tax. The taxpayer contended that it was only worth $18 per share, or $108,000. The secretary of Missouri Lincoln Trust Company wrote a letter to the Commissioner in 1917 stating that the unsold shares of the taxpayer's stock had been for sale to the public at all times at $18 a share. Only $60 was involved in this dispute. The taxpayer paid it because of the small amount involved, but in the letter accompanying the payment continued to protest the Commissioner's valuation of $348,607. The taxpayer now contends that the Government, having fixed the value of the stock in 1917 at that figure for capital stock tax purposes, is bound thereby and cannot now assert its value to be a different amount. In 1918 plaintiff's tax return showed the fair market value of the stock as of September, 1918, to be $108,000. The same is true of the 1919 tax return. In the year 1919, 17 more shares of the stock were sold for $18 a share. The 1920 tax return shows a value of $15.33 per share. All of the remainder of the 6,000 shares of stock were sold to the present owner on April 2, 1920, for $82,000, or $13.67 per share.

The record further shows that in July, 1907, a subsidiary of the Missouri Lincoln Trust Company acquired this property for a consideration stated in the deed of $775,000. This subsidiary, the West End Realty Company, defaulted in its payments on a deed of trust given to the Missouri Lincoln Trust Company at the time of the purchase of the property, and on October 7, 1908, the property was foreclosed under that deed of trust and bought in by the Nina Realty Company, another subsidiary of the Missouri Lincoln Trust Company, for the amount of $25,000.

The net income from the property throughout the years from 1913 to 1949 was stipulated. With considerable fluctuation, that income ranged from approximately $13,000 in 1913 to approximately $100,000 in 1949. Indicative of the wide range of the income, particularly as bearing upon the propriety of the use of the Hoskold Formula, at intervals the net income was as follows: 1913, $13,065.10; 1919, $17,899.57; 1925, $86,285.93; 1930, $49,006.75; 1935, $16,973.97; 1940, $24,610.18; 1945, $27,764.65. The building is located in a district described by the witnesses as favorable for an office building for real estate dealers and law offices. The trial court reached the conclusion upon all the evidence, much of which we have not outlined above, that the property was not worth in excess of $430,000 on May 1, 1913. From an examination of the entire record, and in recognition of the wide range of the evidence on the question of value as of May 1, 1913, we have reached the conclusion that unless the Commissioner is bound by the so-called consent decree, or its valuation of the stock in 1917, the finding of the trial judge of the value of the property cannot be said to be clearly erroneous. We therefore pass to the question of res judicata and estoppel.

■ The general scope of the estoppel of a judgment is stated in Tait v. Western Maryland Ry. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 707, 77 L.Ed. 1405.

"The petitioner seeks a reversal on the merits, asserting that a judgment in a suit concerning income tax for a given year cannot estop either of the parties in a later action touching liability for taxes of another year. He urges further that, if this position is not well taken, he is not concluded by

the former judgment because neither the proofs nor the parties are the same as in the prior proceeding.

"1. The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand * * *. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. Cromwell v. County of Sac, 94 U.S. 351, 352, 353, 24 L.Ed. 195; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262." See also Guettel v. United States, 8 Cir., 95 F.2d 229, 118 A.L.R. 1060.

In the case at bar the parties are the same as the parties before the Board of Tax Appeals in the 1933 and the 1938–39 cases. The claim or demand is different since the present claim relates to a different tax year from those involved in the cases before the Board. Tait v. Western Maryland Ry. Co., supra; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. But only one issue was in dispute in the cases before the Board and that is the issue now in dispute. And although the scheme of the revenue acts is an imposition of tax for annual periods, and the exaction for one year is distinct from any other, yet—"it does not follow that Congress in adopting this system meant to deprive the government and the taxpayer of relief from redundant litigation of the identical question of the statute's application to the taxpayer's status." Tait v. Western Maryland Ry. Co., supra.

The trial court held, 97 F.Supp. 595, 597, that without a hearing or the submission of facts to the court and a judgment on the merits there is no foundation for a judicial determination of anything saying:

"The facts on which the stipulation [3] is based covered valuation of the leasehold now in issue and the amount agreed on was the same as now claimed by plaintiff.

"Plaintiff relies on Commissioner [of Internal Revenue] v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 721, 92 L.Ed. 898. That case holds: '* * * where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. * * * And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change.'

"The 'Decisions' of the Tax Court relied on by plaintiff admittedly involved no hearings before the Tax Court, no facts were submitted to that Court, by stipulation or otherwise, consequently there were no issues presented for the Court to decide. Without a judgment on the merits there is no foundation for a judicial determination of anything. Res adjudicata obviously cannot attach to such a proceeding. While the Tax Court entitled its memorandum 'Decision', it was nothing more than an order confirming an agreement of counsel. There was no decision on any fact or issue.

"'And a decision of that kind rendered by the Tax Court will not support a plea of estoppel in a case of this nature involving liability for income tax for a different year. Blaffer v. Commissioner, 5 Cir., 134 F.2d 389; Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540, certiorari denied,

---

3. Upon which the order of the Board of Tax Appeals was entered.

320 U.S. 787, 64 S.Ct. 196, 88 L.Ed. 473; Riter v. Commissioner, 3 T.C. 301.' Trapp v. United States, 10 Cir., 177 F.2d 1, 5."

In the Sunnen case [333 U.S. 591, 68 S. Ct. 719], referred to above, the Supreme Court said with reference to those cases where the cause of action was different:

"Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments, §§ 68, 69, 70; Scott, 'Collateral Estoppel by Judgment,' 56 Harv.L.Rev. 1."

[2] We do not understand that the Supreme Court meant by saying that "If the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive * * *," that proffered evidentiary facts had to be the same to bring about that result, but rather that the ultimate facts for determination in both cases had to be identical. As stated in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195:

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

And in Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S.Ct. 733, 736, 39 L.Ed. 859, the Supreme Court said of a default judgment:

"The essence of estoppel by judgment is that there has been a judicial determination of a fact, and the question always is, has there been such determination? and not, upon what evidence or by what means was it reached."

Of course, if consent decrees are to be given effect as res judicata it must follow that the similarity of the ultimate fact or issue is alone necessary, since very frequently consent decrees and judgments are entered on stipulation without a recitation of the facts upon which the agreement was reached. Hence for the purposes of this case we pass to the consideration of the effect of consent decrees in applying the rule of res judicata.

In the early case of Cromwell v. Sac County, supra, we find language which may be the origin of later expressions of various courts of high respect and authority which may appear conflicting. Recognizing the practical considerations which frequently actuate litigants in not contesting issues and the unfairness of holding one barred by estoppel of judgment from contesting an issue in a later case involving a different cause of action which was not actually contested in previous litigation between the same parties, the court said:

"Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence,

the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit: ·It does not make the allegations of the declaration or complaint evidence in an action upon a different claim. The declaration may contain different statements of the cause of action in different counts. It could hardly be pretended that a judgment by default in such a case would make the several statements evidence in any other proceeding. Boyleau v. Rutlin, 2 Exch. 665, 681; Hughes v. Alexander, 5 Duer, [488], 493."

And in O'Cedar Corporation v. F. W. Woolworth Co., 7 Cir., 66 F.2d 363, 366, the court recognizes the difficulty in determining the scope of a consent decree, and especially in trade-mark cases because of the lack of identity of descriptive words used in cases of the latter type, but goes on to say:

"The scope of a decree of this character embodying an agreement of the parties is generally involved in some doubt, because of lack of identity of the descriptive words used. Generally speaking, it may be said that as between parties sui juris and in the absence of fraud, a decree of a court having jurisdiction of the subject matter rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred, is as binding and conclusive between the parties and their privies as if the suit had been an adversary one. So construing the decree in the previous litigation between appellant and appellee Woolworth, we cannot escape the conclusion that the court found the use of the words 'cedar oil' as modifying 'polish' to be an infringement of plaintiff's trade-marks and also that they constituted unfair trade practices. From the position by it taken and the decree entered thereon, appellee Woolworth Company cannot now withdraw."

In Woods Bros. Const. Co. v. Yankton County, S. D., 8 Cir., 54 F.2d 304, 308, 81 A.L.R. 300, this court held:

"That it was a judgment based upon an agreed statement of facts, or if it could be considered a consent judgment, does not lessen its force or effect. Of course, jurisdiction cannot be conferred by consent and there was no attempt here so to do. We quote from 34 Corpus Juris, p. 133, § 337, as to a consent judgment: 'But at the same time, as it has the sanction of the court, and is entered as its determination of the controversy, it has the same force and effect as any other judgment, and in the absence of fraud or mistake is valid and binding, as such, as between the parties thereto and their privies, and is not invalidated by a subsequent failure to perform a condition on which the consent was based, or by the fact that it obligates the parties to do that which they could not make a valid contract to do; and unless it is vacated or set aside in the manner provided for by law, it stands as a final disposition of the rights of the parties thereto.' "

The Court of Appeals for the Tenth Circuit had the question under consideration in Continental Petroleum Co. v. United States, 87 F.2d 91, 94, a tax case in which there had been an order entered on stipulation by the Board of Tax Appeals. That Court said:

"An order of redetermination, from which no petition for review is timely filed, made in a proceeding in which the Board has jurisdiction of the subject-matter and parties, is conclusive upon the parties and they cannot litigate the issues anew in a separate action in court. Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Bankers' Reserve Life Co. v. United States, 44 F.2d 1000 [71 Ct.Cl. 279], certiorari denied 283 U.S. 836, 51 S.Ct. 485, 75 L.Ed. 1448; Brampton Woolen Co. v. Field, 1 Cir.,

56 F.2d 23, certiorari denied 287 U.S. 608, 53 S.Ct. 12, 77 L.Ed. 529."

In Rector v. Suncrest Lumber Co., 4 Cir., 52 F.2d 946, 947, the court said:

"The effect of the judgment was to put an end to all litigation between the parties upon the questions determined in the earlier case, * * *. Such a judgment precluded further litigation of the issue, for a judgment entered by consent is as conclusive and final as to any matter determined as one rendered in invitum after contest and trial. Pacific R. Co. v. Ketchum, 101 U.S. 289, 25 L.Ed. 932; U. S. v. Babbitt, 104 U.S. 767, 26 L.Ed. 921; Nashville, C. & St. L. R. Co. v. U. S., 113 U.S. 261, 266, 5 S.Ct. 460, 28 L.Ed. 971; Utah Power & Light Co. v. U. S., 42 F.2d 304, 308 [70 Ct.Cl. 391]; Mc-Gowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Swift & Co. v. U. S., 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587. And such a judgment cannot be impeached collaterally in another proceeding. City of Helena v. U. S., 9 Cir., 104 F. 113; Cox v. M[aryland]. Elec[tric] Rys. Co., 126 Md. 300, 95 A. 43; Morris v. Patterson, 180 N.C. 484, 105 S.E. 25; Watts v. Alexander, Morrison & Co., D.C., 34 F.2d 66."

In United States v. Radio Corporation of America, D.C., 46 F.Supp. 654, 655, Circuit Judge Maris, sitting as a District Judge, held:

"A consent decree, although based upon an agreement of the parties rather than a finding of facts by the court, is not a mere authentication or recording of that agreement. It is a judicial act (United States v. Swift & Co., 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999) and, therefore, involves a determination by the chancellor that it is equitable and in the public interest."

In Snell v. J. C. Turner Lumber Co., 2 Cir., 285 F. 356, 358, the court held that the former decree by consent "does not take away from its effectiveness as binding and conclusive, just as it would be after a trial on the merits."

Judge Hickenlooper, writing for the court for the Sixth Circuit, said in Warner v. Tennessee Products Corp., 57 F.2d 642, 643:

"It is conceded by the defendant, and in view of the authorities the rule could not well be otherwise, that this adjudication in 1924, although by consent, constitutes an estoppel by judgment binding upon the parties or their privies, and that all questions of law and fact distinctly put in issue and determined by the decree cannot be disputed in a subsequent suit between such parties or their privies. Southern Pacific R. Co. v. U. S., 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Nashville, C. & St. L. R. Co. v. U. S., 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971; [E.] Ingraham Co. v. Germanow, 2 Cir., 4 F.2d. 1002; Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., 2 Cir., 7 F.2d 284, 287."

This court, consisting of Judges Stone, Walter H. Sanborn, and Munger, said in Roberts Cone Mfg. Co. v. Bruckman, 8 Cir., 266 F. 986, 987:

"Consent decrees as to validity, scope, and infringement in patent cases are regarded as constituting no adjudication of such matters which will affect other than the parties consenting thereto. But they are intended by the parties to control their rights in respect to the matters covered thereby, and they do have that effect. The method of enforcing this result is by estopping either party from denying the binding effect of the decree so procured. When, as here, a patent is, in a consent decree, adjudged valid, and infringed by a certain machine, that decree has, as between those parties, settled that that patent is valid, and that machine is an infringement. When thereafter complainant desires by a supplemental bill to extend the relief to another machine, which he claims is essentially the same as the one held to be an infringement, the issue thus presented is whether, in the light of the patent as valid, the new machine is essentially the old infringement."

In the case of E. Ingraham Co. v. Germanow, 2 Cir., 4 F.2d 1002, 1003, a consent decree was entered declaring a patent valid and infringed. Later in an action between other parties the patent·was held invalid. After the court in the other case held the patent invalid, the defendant in the first action refused to be bound by the consent decree. In a subsequent action to enforce the consent decree, the court said:

"We do not see how the defendants can take advantage of the decision of this court in the later suit, to which they were not parties. The decree entered upon their consent is a good estoppel, though the issues were not litigated, and while it stands they are as much bound by it as though the later suit had never been brought. Central Life Securities Co. v. Smith, 7 Cir., 236 F. 170, 149 C.C.A. 360; Pooler v. Hyne, 7 Cir., 213 F. 154, 159, 129 C.C.A. 506."

It should be noted further that the Supreme Court enforced a consent decree in Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587.

We direct our attention to the cases relied upon by the trial court. First the case of Trapp v. United States, 10 Cir., 177 F.2d 1, 5. There it was unequivocally held:

"A judgment, not predicated upon stipulated facts, or upon findings of fact, or upon a determination on the merits, but merely to carry out a compromise agreement of the parties, fails to constitute an effective judicial determination of any litigated right. Fruehauf Trailer Co. v. Gilmore, 10 Cir., 167 F.2d 324. And a decision of that kind rendered by the Tax Court will not support a plea of estoppel in a case of this nature involving liability for income tax for a different year. Blaffer v. Commissioner, 5 Cir., 134 F.2d 389; Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540, certiorari denied, 320 U.S. 787, 64 S.Ct. 196, 88 L.Ed. 473; Riter v. Commissioner, 3 T.C. 301."

We find no material distinction between the factual situation in the Trapp case and the facts in the case at bar on the question of res judicata. In order to weigh it and the several cases of like import, we look to the judicial support upon which each is based. All of the cases which the Trapp case cites in support of the conclusion there stated are referred to in the above quoted excerpt from that opinion.

In the case of Fruehauf Trailer Co. v. Gilmore [167 F.2d 330], a consent judgment had been entered for $3,000.00 in favor of Walker against a partnership engaged in transporting gasoline, for personal injuries received by Walker from a fire caused by the driver of the partnership's truck. The partnership and its insurer then brought an action against Fruehauf for the recovery of the $3,000.00 and attorney fees which it had paid in satisfaction of the consent judgment on the ground that it was Fruehauf's negligence in furnishing it with a defective tanker truck in which the gasoline was transported which caused the injury to Walker. Fruehauf defended on the ground, among others, that the consent decree was res judicata on the question of whose negligence caused the injury, and that under that decree it was determined that the partners' truck driver was the negligent party. Fruehauf was not a party to the action resulting in the consent decree, although notified by the partners to defend it. The trial court held against Fruehauf and on appeal the court affirmed, saying:

"The judgment in the action brought by Walker was a consent judgment entered to carry out a compromise agreement. It was not based upon any findings of fact or any determination on the merits. It was not a judicial determination by the court of any litigated right. In entering it, the court merely exercised an administrative function in recording what had been agreed to between the parties. It, therefore, afforded no basis for a finding of negligence." Citing New York Cent. & H. R. R. Co. v. T. Stuart & Son Co., 260 Mass. 242, 157 N.E. 540, 543; Texas & Pacific Ry. Co. v. Southern Pacific Co., 137 U.S. 48, 56, 11 S.Ct. 10, 34 L.Ed. 614; Lawrence

Mfg. Co. v. Janesville Cotton Mills, 138 U.S. 552, 562, 11 S.Ct. 402, 34 L.Ed. 1005; Cutter v. Arlington Casket Co., 255 Mass. 52, 151 N.E. 167, 170; Granzow v. Village of Lyons, Ill., 7 Cir., 89 F.2d 83, 86; Wadhams v. Gay, 73 Ill. 415, 435.

Although Fruehauf was not a party to the action in which the consent decree was entered and hence, absent the possible effect of the notice to it to defend, was not entitled to assert it as res judicata[4], the court did not base its stated conclusion on any such ground. Hence the Fruehauf case must, we think, be placed in the category with those holding that consent decrees will not support the plea of res judicata, and necessitates an examination of the authorities supporting it, which we shall presently do.

In Blaffer v. Commissioner, 5 Cir., 134 F.2d 389, the question for determination in the second case was held not to have been finally determined in the first (upon which the claim of res judicata was based) and in addition to that reason there had been an intervening construction of the applicable law by the Supreme Court contrary to that applied in the first case. Hence, the Blaffer case clearly falls within two recognized exceptions to the general rule—that the issue was not decided in the first case and that as stated in the Sunnen case, 333 U.S., loc. cit. 600, 68 S.Ct. loc. cit. 720, "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." For those reasons the Blaffer case is not authority for a holding that a consent decree will not support the plea of res judicata.

The plea of res judicata was rejected in the case of Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540, 542, for the reason that the issue presented in the second case was not determined in the former, the court saying:

"How far a decision upon a question of law can be an estoppel in a later action upon a different cause of action is a vexed question, but no one has ever suggested that it can extend to matters not actually litigated."

For that reason we do not consider that case authority on the question before us.

The Tax Court in Riter v. Commissioner, 3 T.C. 301, adopted the rule that consent judgments will not support the plea of res judicata. We note, however, in the dissenting opinion on that question there is cited the case of Hot Springs Coal Co. v. Miller, 10 Cir., 107 F.2d 677, 681, wherein a judgment entered upon a stipulation was enforced as res judicata, the court saying:

"Any disposition of a pending action, not illegal, may be fairly agreed to by the parties, and if approved by the court, it should permit such disposition and enter judgment accordingly, and such judgment will be valid and binding upon the parties and their privies. 34 C.J., page 130, § 332; United States v. Parker, 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601; Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; Harniska v. Dolph, 9 Cir., 133 F. 158; Simmons v. Baynard, C.C., 30 F. 532."

Directing our attention to the cases cited in support of the conclusion stated in the Fruehauf case: New York Cent. & H. R. R. Co. v. T. Stuart & Son Co., 260 Mass. 242, 157 N.E. 540, involved a consent decree entered after trial and reversal. The court stated in its opinion that it did not establish anything on the merits, that it was unnecessary to consider the merits in order to enter it, that it was not a judicial determination by the court of any litigated right and was not binding on the party against whom it was offered because it was not acquiesced in by that party—who was not a formal party to the action or the decree. We find no holding in this case to the effect that consent decrees sui generis will not support the plea of res judicata. But the case of Cutter v. Arlington Casket Co., 255 Mass. 52, 151 N.E. 167, 170, does definitely hold that a consent decree *"does not necessarily"* conclude the parties to it,

---

4. I.T.S. Rubber Co. v. Essex Rubber Co., D.C., 270 F. 593, 608; Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83.

and is not in itself res judicata "of the facts put in issue on the bill and answer, because such facts were not determined on judicial consideration."

We find that the cases of Texas & Pacific Ry. Co. v. Southern Pacific Co., 137 U.S. 48, 11 S.Ct. 10, 34 L.Ed. 614, and Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U.S. 552, 11 S.Ct. 402, 34 L.Ed. 1005, were cited as authority in support of the theory that consent judgments would not support the plea of res judicata in Utah Power & Light Co. v. United States, 42 F.2d 304, 70 Ct.Cl. 391, and there distinguished. In the Texas & Pacific case the Supreme Court pointed out that the issue involved in the second case had been found by the lower court [5] not to have been involved in the case relied upon in support of the claim of res judicata and acquiesced in that finding. For that reason it was held that the earlier decision did not support the plea of res judicata upon the well recognized ground that the point in issue had not been previously decided in the previous action involving a different cause of action. The Supreme Court did say, however [137 U.S. 48, 11 S.Ct. 13]:

"The decrees were entered by consent, and in accordance with the agreement, the courts merely exercising an administrative function in recording what had been agreed to between the parties; and it was open to the supreme court of Louisiana to determine, upon general principles of law, that the validity of article 6 was not in controversy or passed upon in the causes in which the decree was rendered. In doing so, that court did not refuse to give due effect to the final judgment of a court of the United States or of another state."

This expression furnishes a reason for the citation of the case on the question now involved. But in our judgment it furnishes a better reason for the recognized principle that judgments not involving the same cause of action, and especially consent judgments of that character, should be used in support of the claim of res judicata with great care, to the end that a question not be held to have been decided and settled which was not actually an issue in the former proceeding.

The Lawrence Mfg. Co. case illustrates another exception to the general rule—that where a party returns to a court of chancery to enforce relief previously awarded by a consent decree, it is at the risk of reopening the former decree. The court said in the Lawrence case [138 U.S. 552, 11 S.Ct. 405]:

"But where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill. Hence, even if it be assumed upon the evidence that the decree against the old corporation bound the new one, yet, this being in effect, in one of the two aspects, and, perhaps, the sole aspect, in which it is framed, a bill to carry the former consent decree into execution, the circuit court was not obliged to do so if it believed that decree erroneous; and that it was erroneous we have already decided. Inasmuch as plaintiff came into a court of equity to have the benefit of the former decree, the court was at liberty to inquire whether circumstances justified the relief."

The court observes that this rule was discussed and *applied* in Wadhams v. Gay, 73 Ill. 415, which latter case was one of the cases cited in the Fruehauf case. Digressing briefly for the purpose of further referring to Wadhams v. Gay, it should be noted that in Gay v. Parpart, 106 U.S. 679, 1 S.Ct. 456, 27 L.Ed. 256, the same decree involved in Wadhams v. Gay was held by the Supreme Court to have been incomplete, lacking finality, and for that reason was not a proper basis for res judicata. But in the Lawrence case, as in the Texas & Pacific Ry. case, the court goes on to say:

"The prior decree was the consequence of the consent, and not of the judgment of the court, and, this being

5. In that instance the Supreme Court of Louisiana.

so, the court had the right to decline to treat it as res adjudicata; Wadhams v. Gay and Gay v. Parpart, supra; Jenkins v. Robertson, L.R. 1 Sc.App. 117; [Taxing Dist. of] Brownsville v. Loague, 129 U.S. 493, 505, 9 S.Ct. 327 [32 L.Ed. 780]; Texas & Pacific Railway Co. v. Southern Pacific Co., 137 U.S. 48, 56 [11 S.Ct. 10, 34 L.Ed. 614]; Edgerton v. Muse, 2 Hill Eq., S.C., 51; Lamb v. Gatlin, 2 Dev. & B. Eq. [N.C.] 37; Bean v. Smith, Fed.Cas. No.1,174, 2 Mason 252."

Again we find apparent basis for the reasoning of the Trapp and Fruehauf cases.

Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83, 86, heretofore cited in a footnote, was cited in the Fruehauf opinion. In the Granzow case the receiver of a national bank made a settlement with the City of Lyons by which it was agreed that the city might sell securities pledged by the bank to the city to secure the city's deposits in the bank and apply the proceeds of the sale on the bank's debt to the city. The receiver went to the court administering the liquidation proceedings and procured an order permitting the city to do as the agreement provided. The city was not a formal party to the liquidation proceedings. The order was made ex parte as a routine order in the usual course of administration. Later the courts held that the pledge of assets was invalid under Illinois law. In a subsequent action by the receiver to recover from the city the proceeds of the sale, involving a different cause of action, the court denied the plea of res judicata interposed by the city. Clearly the situation fell within the exception created by an intervening judicial declaration, above noted, stated in the Sunnen case. The Granzow opinion expressly points out that there was no showing that the court had jurisdiction of the city, that there was no showing that the court was dealing with anything but an ex parte proceeding, no showing of an adjudication between the parties or that the city was a party and bound within the meaning of the doctrine of res judicata, no showing that there was a suit in the legal sense and parties in the legal understanding

of the term. It was then stated unequivocally that—"No issue was adjudicated" (in the earlier order). Adequate grounds obviously existed for refusing to treat the order as res judicata. But the court then said:

"The order was the consequence of consent and not of judgment by the court. Consequently it could not be treated as res adjudicata." Citing the Lawrence Mfg. Co. case, supra, heretofore examined, and City and County of San Francisco v. Le Roy, 138 U.S. 656, 11 S.Ct. 364, 34 L.Ed. 1096.

The claim of res judicata in the San Francisco-Le Roy case was denied upon the sole ground that the attorney agreeing to the consent decree did not have authority to do so.

Demonstratively, we find authoritative support for the statement in the Trapp and Fruehauf cases that consent judgments will not support a plea of res judicata. But we note that in several instances, notably in the Seventh Circuit, when the question has been necessary to the determination of the cause before it, the court has given effect to a consent decree as a basis for the plea, although in other cases language has been used which on first impression tends to leave a contrary impression.

[4,■] Our hesitancy to disagree with the Tenth Circuit should be demonstrated by the extent of our research on this question. But we respectfully observe that if we followed Trapp v. United States and Fruehauf Trailer Co. v. Gilmore, it would be necessary for us to disagree with that court's holding in Continental Petroleum Co. v. United States, supra. From our somewhat extensive research on the question we are constrained to hold and do hold that under proper circumstances consent decrees will support a plea of res judicata and that the plea is good under the circumstances of this case. Whether a consent decree would support the plea of res judicata under circumstances less compelling than exist in this case we need not determine. But here the parties dealt at arm's length. They threshed out the facts. They agreed upon the basis for depreciation as

of a date long past, after extensive and deliberate negotiations. That fact in dispute —the actual fair value of the building on May 1, 1913—was the same at all times regardless of the different opinions which may have existed prior to the agreement, stipulation and decree, or which may exist now. There has been no change in the law or its interpretation. In the language of the Sunnen case as quoted in Commissioner of Internal Revenue v. Texas-Empire Pipe Line Co., 10 Cir., 176 F.2d 523, 525, "Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel."

Where the action involves a different cause of action, a consent judgment should be used with caution, and adequate care must be taken to be sure that the question involved in the later action was actually in issue and its determination actually embraced in the consent decree. But when that is true such a decree should not be cast aside and the agreement embodied in it ignored, merely because it was a consent decree.

■ Were the attorneys' fees, paid at the court's order in the reorganization proceedings, properly deductible as ordinary and necessary expenses paid in carrying on the taxpayer's business within the meaning of the pertinent provisions of Sec. 23(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1)—

> " * * * In computing net income there shall be allowed as deductions * * *. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

They were not. Motion Picture Capital Corp. v. Commissioner of Internal Revenue, 2 Cir., 80 F.2d 872; Skenandoa Rayon Corp. v. Commissioner of Internal Revenue, 2 Cir., 122 F.2d 268.

The conclusion reached on the questions determined above makes it unnecessary to consider other points set forth in the briefs. The action of the trial court in holding that the consent judgments of the Board of Tax Appeals were not res judicata on the question of valuation for depreciation purposes is reversed. In all other respects the judgment of the trial court is affirmed and the cause is remanded for further proceedings consistent with this opinion.